690 A.2d 549

ANNE ARUNDEL COUNTY PROFESSIONAL
FIREFIGHTERS ASSOCIATION,

v.

ANNE ARUNDEL COUNTY.

No. 991, Sept.Term, 1996.

Court of Special Appeals of Maryland.

March 5, 1997.

Joel A. Smith (Andrew H. Kahn, Sarah P. Harland, Kahn, Smith & Collins, P.A., on the brief), Baltimore, for appellant.

David A. Plymyer (Phillip F. Scheibe, Diane T. Swint, on the brief), Annapolis, for appellee.

Argued before WENNER, DAVIS and EYLER, JJ.

EYLER, Judge.

The question of first impression before us is whether appellant, Anne Arundel County Professional Firefighters Association (the Union), may compel appellee, Anne Arundel County (the County), to arbitrate, pursuant to grievance procedures contained in a collective bargaining agreement entered into by the parties, a dispute between it and the County regarding the composition of the bargaining unit.

## Facts

The Union has been the certified exclusive bargaining agent for certain uniformed employees of the Anne Arundel County Fire Department since collective bargaining began with the enactment of the County Employee Relations Act in 1972. Article 8, Title 4, Anne Arundel County Code (hereinafter "Code").[1] Periodically, the County and the Union have negotiated new labor agreements referred to as Memoranda of Agreement. The Memorandum of Agreement for fiscal year 1996 (MOA or Agreement), effective July 1, 1995 through June 30, 1996, provided for automatic annual renewal, absent written notice by either party of a desire to terminate, modify, or amend the Agreement.

Section 2.1 of the MOA provided that the County shall recognize the Union as the exclusive representative of the employees identified in § 2.2 of the MOA for the purpose of negotiating collectively with the County, pursuant to § 4–108 of the Code,[2] "with respect to wages, hours, working conditions and other terms of employment." Section 2.2 of the MOA defined employees as all uniformed fire personnel of Anne Arundel County, including Fire Fighter II, Fire Fighter III, Fire Fighter/Cardiac Rescue Technician, Fire Fighter/Emergency Medical Technician Paramedic, Fire Lieutenant, and Fire Captain. Consequently, the certification of the Union as exclusive bargaining representative for certain personnel in accordance with § 4–107[3] of the Code included fire lieutenants and fire captains, beginning in 1972 and continuing through the fiscal year 1996 Agreement.

In February 1996, the Union and the County began negotiating the terms of a new collective bargaining agreement for

---

**1.** Hereinafter, all citations to the Anne Arundel County Code shall be to Article 8, Title 4.

**2.** Section 4–108 of the Code sets forth the powers and duties of exclusive representatives.

**3.** Section 4–107 of the Code sets forth procedures for the certification of an employee organization as exclusive representative.

fiscal year 1997. On February 29, the Union received a letter from the County Personnel Officer stating that the County would no longer recognize the Union as the exclusive representative of fire lieutenants and fire captains because they were "management and confidential employees" and that the County would cease deductions of Union dues from lieutenants and captains effective July 1, 1996.[4] The letter informed the Union that the Code prohibited the inclusion of fire captains and fire lieutenants in the bargaining unit because they are management employees, and management employees and non-management employees cannot be in the same unit. Enclosed with the letter was an opinion by the County Attorney addressing the issue. Section 4–107(d) of the Code, as it existed prior to September 22, 1996, provided that "management and confidential employees may not be included in the same unit with non-management or non-confidential employees." Additionally, § 4–105(b) of the Code, as it existed prior to September 22, 1996, provided that "management employees may not join, assist in, or participate in an employee organization or an affiliate of an employee organization that represents or seeks to represent employees under the direction of management employees...." Those sections had been in existence since enactment of the Employee Relations Act but, apparently, the County had not previously asserted that captains and lieutenants were management employees within the meaning of their terms.

On March 5, 1996, the Union filed a grievance pursuant to Art. 6 of the MOA. Section 6.1 defines a grievance as "any difference or dispute between an employee and the County arising out of the employment relationship." Section 6.2 sets forth a four step procedure for processing grievances. Step I requires that notice be given to the affected employee's immediate supervisor. Step II requires the submission of written notice to the head of the affected department. Step III provides for a written appeal to the Personnel Officer, and Step IV provides the employee or employee representative

---

4. The Union does not challenge the timeliness of this notice.

with a choice between a direct appeal to the Personnel Board and binding arbitration. In this case, the grievance proceeded to Step III, at which point the County Personnel Officer declared that the issue was "not grievable." The Union then elected to invoke Step IV–B which provides for binding arbitration. Maintaining that the dispute was not an arbitrable one, the County Personnel Officer refused to participate in the arbitration proceedings.

The Union filed a complaint for declaratory judgment and "ancillary equitable relief" in the Circuit Court for Anne Arundel County on April 4, 1996, asking for a decree that the dispute between the parties is arbitrable and an order compelling the County to arbitrate, based on its interpretation of the definition of grievance set forth in § 6.1 of the MOA. A hearing was held on April 12, 1996 wherein the County Personnel Officer testified that the parties had engaged in mediation regarding the new MOA, pursuant to § 4–110 of the Code,[5] but that the mediation had been unsuccessful in light of the parties' inability to agree regarding the composition of the bargaining unit. Further, the County's attorney represented to the court, and it was not disputed, that neutral fact-finding had been scheduled.

The circuit court, in a memorandum opinion and order dated April 25, 1996, held that the issue of whether fire lieutenants and fire captains are managers within the meaning of § 4–105(b) of the Code, and, therefore, must be excluded from the bargaining unit, relates to the negotiation of a future MOA

---

**5.** Section 4–110 sets forth dispute resolution procedures for those instances when the parties reach an impasse during negotiations of the terms of a MOA. Under § 4–110, the dispute first is submitted for mediation. If mediation is unsuccessful, then the dispute is submitted for fact-finding by an individual selected by mutual agreement of the parties. The mediator may then assist the parties once again in the event the parties do not voluntarily resolve the dispute after receiving the findings and recommendations of the fact-finder. If the dispute is not resolved at that juncture, the recommendations of the factfinder, the County Executive, and the Union are submitted to the County Council and, after conducting a public hearing, the County Council resolves the dispute. The County Council's decision on the issue is final.

governed by the dispute resolution procedures set forth in § 4–110 of the Code rather than the grievance procedure set forth in Art. 6 of the MOA. The Union then took this timely appeal.[6]

## Question Presented

We quote from the briefs filed by the Union and the County because the difference in phraseology of the question before us delineates the crux of the dispute between the parties. According to the Union, the question on appeal is as follows:

> Does the Union's grievance which concerns the County's unilateral refusal to recognize the Union as the exclusive bargaining representative of fire lieutenants and fire captains present a dispute which arises out of the employment relationship?

By contrast, the County frames the issue as follows:

> When the County and Union are negotiating a prospective contract, may the County be compelled to arbitrate the question of whether the job classifications of Fire Captain and Fire Lieutenant may be included in the representation unit to be covered by the contract?

## Discussion

The Union argues that the arbitration provision in Art. 6 of the MOA is broad and encompasses any and all disputes arising out of the employment relationship. The Union further argues that the question of which classes of employees

---

6. Although not part of the record before us, we are informed by the parties that, subsequent to the trial court's decision, pursuant to § 4–110 of the Code, the County Council passed Resolution 33–96 in which it denied the Union's request that fire captains and lieutenants remain in the bargaining unit. Further, subsequent to briefing, the County informed us that, on August 8, 1996, the County Council enacted Bill No. 64–96, effective September 22, 1996, which, in pertinent part, amended § 4–105(b)(1) of the Code to provide that that section "shall be construed to prohibit ... fire captains and fire lieutenants from joining, assisting in, or participating in the activities of an employee organization that represents or seeks to represent any employees whose classification includes the title 'fire fighter'...."

are members of the bargaining unit and entitled to represen-
tation by the Union is "[o]ne of the most basic terms of
employment," and thus, falls squarely within the definition of
grievance set forth in § 6.1. The Union contends that its
interpretation of § 6.1 is supported by those federal and
Maryland cases which hold that, if a collective bargaining
agreement contains an arbitration clause, there is a presump-
tion that the matter in dispute is subject to arbitration.
Citing *AT & T Technologies v. Communications Workers*, 475
U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)
(quoting *United Steelworkers v. Warrior & Gulf Navigation
Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d
1409 (1960)), and *Baltimore v. Baltimore Fire Fighters, Local
734, IAFF*, 93 Md.App. 604, 610, 613 A.2d 1023 (1992), *cert.
denied*, 329 Md. 337, 619 A.2d 547 (1993), the Union argues
that a request for arbitration should not be denied unless it
can be stated with positive assurance that the clause does not
cover the dispute. The Union concludes that the dispute is
facially covered by the MOA grievance procedure and, at the
very least, it cannot be said with assurance that the dispute
does not arise out of the employment relationship.

Finally, the Union argues that the County's decision unilat-
erally to redefine the bargaining unit is a violation of the
County's Employee Relations Act, and particularly, § 4–107,
governing certification, and § 4–109, governing decertification,
of exclusive representatives.[7]

---

7. In response to a passing reference by the County to the National
Labor Relations Act (NLRA) for the proposition that the scope of the
bargaining unit has traditionally been recognized to be a permissive
subject of collective bargaining, the Union also argues in its reply brief
that the County's unilateral exclusion of fire captains and lieutenants
from the bargaining unit is an unfair labor practice under the NLRA.
As both parties concede that the NLRA does not apply to public
employers such as the County, and more important, as these arguments
were not made in or decided by the circuit court, we see no need to
address them herein. *See* Rule 8–131. We do note, however, that the
Union's response mischaracterizes the County's argument. The County
does not cite the cases involving the NLRA for the proposition that "it
may unilaterally refuse to recognize the Appellant Union as the exclu-
sive bargaining representative of Fire Captains and Fire Lieutenants."

The County's position is that the scope of the bargaining unit is an issue that arose during negotiations of a *new* collective bargaining agreement and has nothing to do with the 1996 MOA. The County argues that the parties could not agree upon the terms of a new collective bargaining agreement, reached an impasse, and then resolved the impasse in accordance with the standard procedure provided in § 4–110 of the Code. Alternatively, the County argues that the grievance procedure applies only to issues involving conditions of employment, such as hours, wages, or work conditions, and does not apply to disputes regarding the composition of the bargaining unit. The County also argues that the question of whether fire captains and fire lieutenants are managers is a question of law which is more appropriately resolved by the courts than by an arbitrator. Finally, the County argues that this appeal is moot because the County Council has resolved the dispute between the parties by passing Resolution 33–96 and, subsequently, by enacting Bill No. 64–96. *See* footnote 6, *supra.*

 Preliminarily, we hold that the appeal is not moot. "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide...."

*Insurance Comm'r v. Equitable Life Assurance Soc'y of the United States,* 339 Md. 596, 613, 664 A.2d 862 (1995) (quoting *Attorney General v. Anne Arundel County School Bus Contractors Assoc.,* 286 Md. 324, 327, 407 A.2d 749 (1979)); *Mercy Hospital v. Jackson,* 306 Md. 556, 561, 510 A.2d 562 (1986); *Kindley v. Governor of Maryland,* 289 Md. 620, 631, 426 A.2d 908 (1981). We agree with the Union that Resolution 33–96 does not resolve the issue between the parties. The Union maintains that the 1996 Agreement remains in effect based upon the fact that the Resolution never was ratified by the

---

Rather, the County acknowledges that the composition of the unit has been a subject of collective bargaining, albeit unsuccessful, between the parties, and that the impasse procedures of § 4–110 have been invoked.

membership. The Union has informed us that pending in the Circuit Court for Anne Arundel County is another declaratory judgment action and petition to compel arbitration of the issue of whether the 1996 Agreement remains in effect. In addition, the Union argues that if, in fact, the dispute constitutes a grievance governed by the grievance procedures of Article 6 of the MOA, the County Council did not have the authority to decide the issue under § 4–110 of the Code, and the action of the County Council is *ultra vires*. Finally, the Union argues that there remains a dispute between the parties regarding the County's failure to utilize the decertification provisions set forth in § 4–109 of the Code.

■ Similarly, although Bill No. 64–96 does resolve the issue for the period from September 22, 1996 forward, it does not resolve the issue for the period between July 1, 1996 and September 21, 1996. We have no record upon which to evaluate what impact, if any, an arbitration decision in favor of the Union would have upon captains' and lieutenants' salaries, or other issues, for this time period, and consequently, no record upon which to find that the case has been entirely mooted.

■ Further, even if the dispute had been rendered moot by the adoption of Resolution 33–96 and the enactment of Bill No. 64–96, we would decide the issue because the appeal involves matters of importance and public concern that are likely to recur if not decided now. *Lloyd v. Supervisors of Elections*, 206 Md. 36, 42, 111 A.2d 379 (1954). *See also Equitable*, 339 Md. at 613–14, 664 A.2d 862; *Mercy Hospital*, 306 Md. at 562–63, 510 A.2d 562; *Kindley*, 289 Md. at 631, 426 A.2d 908. Although we will decide moot cases only in rare instances, *Reyes v. Prince George's County*, 281 Md. 279, 297, 380 A.2d 12 (1977), this case meets all of the requisites for decision. The Union's argument that the grievance procedures, and not the impasse procedures, are applicable to the current dispute between the parties regarding the composition of the bargaining unit, is an argument that has general application to negotiations of all terms of future agreements

between the parties. As the agreements between the Union and the County are renegotiated and renewed on an annual basis, the issue, whether the grievance procedures or impasse procedures are applicable to any particular dispute over terms of future agreements, is likely to recur. In addition, given the expedited manner in which the impasse procedures are required to occur, any similar dispute likely would reach a similar resolution prior to our opportunity to review an action denying a petition to compel arbitration. Finally, the issue involves a matter between a government entity and its employees. Accordingly, even assuming that the case is moot, we will decide the appeal.

Although it is true, as the Union notes, that arbitration is a favored form of dispute resolution, arbitration cannot be compelled in the absence of a contractual or, in the case of a government entity, statutory[8] obligation to arbitrate. *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates,* 313 Md. 652, 658, 547 A.2d 1048 (1988); *Gold Coast Mall v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91 (1983); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs.,* 109 Md. App. 217, 290, 674 A.2d 106, *cert. granted,* 343 Md. 334, 681 A.2d 70 (1996). Moreover, a government entity, such as the County, may not "enter into binding arbitration or binding collective bargaining agreements establishing wages, hours, pension rights, or working conditions for public employees" unless expressly authorized by statute. *Office & Professional Employees International Union, Local 2 v. MTA,* 295 Md. 88, 97, 453 A.2d 1191 (1982). *See also Anne Arundel County v. Fraternal Order of Anne Arundel Detention Officers & Personnel,* 313 Md. 98, 113–14, 543 A.2d 841 (1988); *Montgomery Co. Education Ass'n v. Board of Education,* 311 Md. 303, 313, 534 A.2d 980 (1987).

In the instant case, the source of the County's authorization to submit to binding arbitration is Article 8, Title 4 of

---

8. *See, e.g.,* § 4–107(e) of the Code.

the Code and § 521(c) of the County Charter. Specifically, § 521(c) of the Charter provides that "[t]he parties to any appeal which the Personnel Board may hear under subsection (a)(2) of this section, may submit the matter to binding arbitration. The County Council shall by ordinance provide for the implementation of this section." A substantially similar provision is set forth in § 4–112(a) of the Code. Section 521(a)(2) of the Charter provides that the Personnel Board shall have the power

[t]o hear and to decide finally for the County in open meeting appeals from and actions pertaining to the allocation or reallocation of positions, appeals from any disciplinary action suspending, reducing in rank or pay, or removing any officer or employee in the classified service, and any other action designated by law or collective bargaining agreement to be subject to grievance procedures.

The 1996 MOA provides that grievances may be submitted to arbitration in lieu of direct appeals to the Personnel Board at the parties' election and defines grievance as follows:

A grievance is defined as any difference or dispute between an employee and County arising out of the employment relationship. Grievances may be filed by an individual employee or by Union. Individual grievances by the employees must be signed by the employee grievant and shall not be filed as a Union grievance. Grievances involving disciplinary action against employees shall be filed as individual grievances and shall not be filed as Union grievances.

MOA, § 6.1. Although we agree with the Union that § 6.1 defines grievance broadly, it can be read, at most, to govern disputes that arise from the implementation of the MOA. The MOA defines the rights and duties of the parties regarding the employment relationship, during the duration of the MOA. Consequently, a grievance, at the very least, must be premised upon a violation of some term of the MOA.

Our interpretation of § 6.1 [9] is supported by the language of the preamble to the MOA, which provides in pertinent part that the County and the Union have entered into the MOA for the purpose of "provid[ing] peaceful procedures for the resolution of disputes *arising hereunder*." (Emphasis added). At the very least, the grievance procedures do not apply to disputes that arise during negotiations of a future MOA, as evidenced by the fact that the County Council has prescribed the dispute resolution mechanism available in such cases. *See* § 4–110. Binding arbitration is not authorized by the County Council for disputes arising during negotiations of a future agreement. *See id.* The question then remains whether the dispute is one arising from negotiations of a future agreement or is one arising from implementation of an existing agreement.

The Union contends that the right to be represented by a labor organization of the employee's choice is a right guaranteed by §§ 2.1 and 2.2 of the MOA. In our view, the County's attempt to redefine the bargaining unit does not violate either § 2.1 or § 2.2 of the MOA. Section 2.2 defines the composition of the bargaining unit, while § 2.1 provides as follows:

> County recognizes Union as the exclusive representative of employees, as defined in Section 2.2 of this Article, for the purpose of negotiating collectively with the County pursuant to Article 8, Section 4–108 of the Anne Arundel County

---

9. In its brief, the Union quotes *Gold Coast Mall* for the proposition that, "where the language of the arbitration clause is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement," the issue of arbitrability is itself arbitrable. 298 Md. at 107, 468 A.2d 91. The Union does not take the further step of arguing that that proposition mandates that the threshold issue of arbitrability is itself arbitrable under the facts of the instant case. In any event, the issue was neither raised in nor decided by the circuit court, so we need not address it now. Rule 8–131. Even if the issue had been properly preserved, this is not a situation in which the issue of arbitrability need be referred to an arbitrator under the rationale expressed in *Gold Coast Mall*. Regardless of whether the language of Article 6 is considered ambiguous generally with respect to the scope of the arbitration provision, the provision does not apply to the facts of this case.

Code ... with respect to wages, hours, working conditions, and other terms of employment.

Section 4–108 of the Code governs negotiations that culminate in a memorandum of agreement.

The County did not refuse to negotiate with the Union on any issue, based simply on a decision that it would no longer recognize the Union as the exclusive representative. What occurred is that the County requested an amendment of the terms of § 2.2 for the 1997 fiscal year agreement and engaged in negotiations with the Union regarding such amendment. Those negotiations were unsuccessful, and the dispute resolution mechanism of § 4–110 of the Code was implemented.

The Union cites *Detention Officers*, 313 Md. at 98, 543 A.2d 841, in support of its position and argues that it is a case that addresses a "virtually identical" issue. We disagree. In that case, the Court was faced with the creation of a new position, *i.e.*, fire lieutenants, and whether the new position would be included within the bargaining unit. The agreement in that case expressly provided for such an issue to be resolved in accordance with § 4–107(e) of the Code.[10] It was not disputed by the parties that the agreement called for binding arbitration. Instead, the question before the Court of Appeals was whether the arbitration provision was enforceable generally and whether Anne Arundel County could be compelled to arbitrate the dispute or whether it constituted a delegation of governmental power and, thus, was not arbitrable. The Court of Appeals held that the question was not so determinative of employment compensation as to be an inappropriate subject for arbitration, even though there was no specific authority in the County Charter or from the General Assembly at that time. Our holding in this case is entirely consistent with *Detention Officers*. Although we recognize that a dispute involving the composition of a bargaining unit may very well be an appropriate subject for binding arbitration, *see* § 4–107(e) of the Code and § 2.2(b) of the MOA, arbitration is not

10. The 1996 MOA contains a similar provision in § 2.2(b).

the agreed upon mechanism for a dispute arising within the particular factual context presented by this case.

The Union also contends that *Annapolis Professional Firefighters, Local 1926, IAFF v. City of Annapolis,* 100 Md.App. 714, 642 A.2d 889 (1994), supports its position. Although not directly on point, that case, if anything, supports the County's position and our holding here today. In *Annapolis Firefighters,* the City of Annapolis, during negotiations of a new collective bargaining agreement, informed the union that lieutenants and captains would have to be removed from the bargaining unit because of a similar provision in the City Code prohibiting supervisory and nonsupervisory personnel from being members of the same unit. Apparently, the City Code, and the existing collective bargaining agreement, contained a provision, similar to § 4–110 of the County Code, for mediation and neutral fact-finding in the event that the parties reached an impasse during negotiations of a new collective bargaining agreement. Unfortunately, the agency designated to mediate and engage in neutral fact-finding had become nonoperational because of lack of funding. Accordingly, after unsuccessful negotiations, the City ultimately announced that the parties had reached an impasse and informed the union that captains and lieutenants would thereafter be excluded from the bargaining unit. The union in that case sought an order enjoining the City from unilaterally excluding captains and lieutenants from the bargaining unit. The union's request for injunctive relief was denied by the circuit court and we affirmed. In doing so, we noted that the better remedy would have been the designation of a substitute mediator/neutral factfinder and an order compelling the City to submit to mediation and neutral fact-finding and that the circuit court did not abuse its discretion in denying the relief requested by the union. *Id.* at 727, 642 A.2d 889. In addition, we observed that mediation and neutral fact-finding are methods of dispute resolution that are as favored as arbitration:

> For disputes that are susceptible to it, mediation and neutral evaluation have become, throughout the nation and increasingly throughout this State, equally "favored method[s] of dispute resolution," and we see no rational basis for

not enforcing agreements to utilize such methods in much the same manner as agreements to arbitrate are enforced. *Id.* at 724, 642 A.2d 889.

The Union argues that, while Resolution 33–96, excluding fire captains and fire lieutenants from the bargaining unit, was passed by the County Council, it was not ratified by the membership, and consequently, the 1996 Agreement remains in full force and effect. The Union's argument rests upon facts and circumstances outside the record on appeal and beyond the proper scope of our review.[11] In any event, regardless of the ultimate action taken by the County Council, the County, when it initiated discussions regarding the scope of the bargaining unit, was negotiating[12] the terms of the 1997 fiscal year agreement, and accordingly, § 4–110 applied.[13]

The Union's alternative argument also fails. The decertification process described in § 4–109 governs only decertifica-

---

11. The Union argues that the MOA itself requires that its modification or termination be subject to ratification by the Union membership. Those provisions have no application to the resolution of a dispute through the procedure contained in § 4–110 of the Code. Acts of legislative bodies are not subject to ratification outside of the referendum process.

12. While it does not appear that the County, during negotiations, ever was prepared to relinquish its position regarding the composition of the bargaining unit, that is a comment on its bargaining position only. The record reveals that it never refused to engage in collective bargaining with the Union, and in fact, the negotiations between the parties went through the process delineated in § 4–110 of the Code.

13. Under § 22.3, the County could have initiated discussions with the Union regarding an amendment to § 2.2 at any time during the duration of an MOA. Section 22.3 provides in pertinent part that

[i]f any term or provision of this Agreement is at any time during the life of this Agreement in conflict with any law or court decision, County and Union shall meet as soon as possible to negotiate such term or provision.

The County's contention was that the inclusion of fire captains and fire lieutenants constituted a violation of §§ 4–105 and 4–107(d) of the Code. Accordingly, once it brought the matter to the Union's attention, the parties were required, under § 22.3, to meet as soon as possible to negotiate the term. We do not decide today whether the impasse procedures described in § 4–110 would govern in that situation as well.

tion of an exclusive representative that is initiated by the employees, not by the County. That section provides in pertinent part as follows:

(a) A decertification petition alleging that an exclusive representative is no longer the majority representative of employees in an appropriate representation unit may be filed with the Personnel Officer by an employee, a group of employees or their representative, or an employee organization. . . .

It does not follow from this provision, and the certification provision of § 4–107, that only the member employees have the authority to change the composition of the bargaining unit. Nothing in these sections prohibits the Union and the County from amending § 2.2 of the MOA to redefine the bargaining unit, and nothing in the MOA prohibits the amendment of that section. Even assuming that decertification is the only process by which the composition of the bargaining unit may be changed, the Union's argument goes to the merits of the case, which the Union concedes are not before us, rather than to the issue of the appropriate vehicle for dispute resolution.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.