703 A.2d 1338

CARROLL COUNTY ETHICS COMMISSION

v.

Robert H. LENNON.

No. 365, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 8, 1998.

50

James R. Chason (Leora R. Simantov and Whiteford, Taylor & Preston, L.L.P., on the brief), Towson, for appellant.

Richard C. Murray, Westminster, for appellee.

Argued before CATHELL, SALMON and SONNER, JJ.

SONNER, Judge.

After an investigation and an administrative hearing, appellant, the Carroll County Ethics Commission (Ethics Commission), determined that appellee, attorney Robert H. Lennon, violated provisions of the Carroll County Ethics Ordinance when he represented clients who had business before the county agency of which he was a member. Appellee then filed a complaint for injunctive and declaratory relief in the Circuit Court for Carroll County, claiming, among other things, that appellant erred as a matter of law in its interpretation of the Ethics Ordinance. On October 29, 1996, the Circuit Court for Anne Arundel County[1] (Lerner, J.) granted summary judgment in favor of appellant, and dismissed appellee's claims with prejudice. On appellee's motion for reconsideration, however, the court reversed itself and granted summary judgment in favor of Lennon, finding, as a matter of law, that he did not violate the Ethics Ordinance. We must decide three issues in this appeal.

1. Whether the Ethics Commission, an administrative agency, is precluded as a matter of law from appealing the trial court's ruling.

---

1. The action was transferred to the Circuit Court for Anne Arundel County after several judges on the Carroll County Circuit Court disqualified themselves.

2. Whether appellee's voluntary cessation of the challenged conduct and subsequent resignation from the administrative agency render the case moot.

3. Whether the lower court was legally correct in concluding that appellee did not violate the Ethics Ordinance.

With respect to the preliminary issues, we find that a live controversy exists and that the Ethics Commission has standing to maintain the appeal. As to the merits, we find that the lower court erred in concluding that appellee did not violate the Ethics Ordinance and, accordingly, reverse.

## I.

This case addresses a delicate and important issue in the area of conflicts of interest. Specifically, we are asked to decide when, if ever, it is permissible for an attorney simultaneously to represent a client and serve on a local administrative body, when the client has business before that administrative body. Appellee, Robert Lennon, was a member of the Carroll County Planning and Zoning Commission (Planning Commission) from January 1994 to May 1997. During those same years, Lennon also maintained a private law practice in Carroll County, specializing in the area of real property law.

Beginning in late 1994, in his capacity as a private attorney, Lennon represented Samuel and Linda Battaglia (the Battaglias) in connection with a parcel of real property owned by the Battaglias in Carroll County. Specifically, Lennon prepared an "off-conveyance" application for the Battaglia property.[2] While there is some question as to when the representation ceased, the parties do not dispute that an attorney-client

2. An "off-conveyance" is the term used in Carroll County to describe the process of subdividing those lots which are not described in the County's recorded subdivision plat. Carroll County Subdivision Regulations, § 1.2.2 (1994). To obtain an off-conveyance, an applicant must get approval from the Department of Permits and Regulations. If the application is approved by the Department of Permits and Regulations, as is the case in the majority of off-conveyance applications, formal subdivision approval (by the Planning Commission) is not required. *Id.,* § 3.

relationship existed between Lennon and the Battaglias with respect to the off-conveyance application. Around the same time in 1994, the Battaglias sought to amend the Carroll County Water and Sewerage Master Plan to extend water and sewer service to their property. Although Lennon did not provide any legal services to the Battaglias with respect to the water and sewer request, that request is, nevertheless, an important aspect of the case because it falls under the jurisdiction of the Planning Commission, the agency on which Lennon sat at the time.

On December 21, 1994, the Battaglias' request to extend water service came before the Planning Commission for the first time. Lennon recused himself from the proceedings and took no part in the consideration of the request. On March 6, 1995, Lennon filed the Battaglias' off-conveyance application with the Department of Permits and Regulations. The application was approved on March 9, 1995, and in April Lennon prepared the necessary deeds for the Battaglias' off-conveyance.

The key date that eventually gave rise to the Ethics Commission's inquiry is March 21, 1995, on which the Planning Commission met and voted on the Battaglias' proposed amendments to the water and sewer plan. At this meeting, according to the record, Lennon "participated in the discussion of the ... Battaglia plan, moved for approval of the Battaglia plan, and voted to approve the Battaglia plan."

By letter dated April 8, 1996, the Carroll County Ethics Commission notified Lennon that his representation of the Battaglias may have constituted a violation of the Carroll County Ethics Ordinance §§ 3.a, 3.c, and 3.d. The Ethics Commission wrote that it was considering "whether [Lennon's] legal representation of clients with business before the Planning Commission ... may constitute a violation of [the Ethics Ordinance]," and invited a written response from Lennon. Lennon's response a month later did not directly address the merits of the Ethics Commission's inquiry, but rather attacked the validity of the Ethics Ordinance and the

"lack of substantive or procedural due process" provided for by the Ordinance. On May 15, 1996, the Ethics Commission heard oral comments from Lennon.

On July 10, 1996, the Ethics Commission issued a memorandum opinion, finding that Lennon violated §§ 3.c and 3.d of the Carroll County Ethics Ordinance by handling the Battaglias' off-conveyance application while the Battaglias' water and sewer request was before the Planning Commission, and by handling off-conveyance applications for the Battaglias and other clients. The ethics law provides, in pertinent part:

## SECTION 3 CONFLICTS OF INTEREST

Carroll County officials and employees who are subject to this Ordinance shall not:

* * * *

c. be employed by a business entity that: has or is negotiating a contract of more than $3,500.00 with the County or is regulated by their agency; except as exempted by this Commission pursuant to Section 6 of this Ordinance.

d. hold any outside employment relationship that would impair impartiality or independence of judgment.

The Ethics Commission found that "Mr. Lennon, as a private attorney, was clearly employed by the Battaglias and the Battaglias, insofar as the extension of water service to their property is concerned, were regulated by the Commission of which Mr. Lennon is a member." In addition, the Ethics Commission found that Lennon's handling of off-conveyance applications for the Battaglias and a "number of [other] clients," while not as "blatant" as his involvement in the Battaglias' water and sewerage proposal, "nevertheless constitute[d] outside employment in violation of § 3.c. . . ." In reaching the second finding, the Ethics Commission reasoned that, although off-conveyance applications are initially filed with the Bureau of Development Review, rather than the Planning Commission, "records reflect that off-conveyance

applications do occasionally give rise to issues which are determined by the Planning & Zoning Commission." The Ethics Commission added:

> The fact that a particular application for an off-conveyance is not likely to come before the Planning Commission does not negate the fact that the applicant is regulated by the agency of which Mr. Lennon is a member. Moreover, the fact that the application is considered in the first instance by the Bureau of Development Review does not change the authority of the Planning Commission over the issue.

The Ethics Commission directed Lennon to refrain from any such representation in the future, but took no further action. Later that month, however, the Carroll County Commissioners held a hearing concerning Lennon's conduct in which they determined that Lennon's actions constituted "malfeasance in office" and removed Lennon from the Planning Commission.

Lennon then brought an action against the Ethics Commission and the County Commissioners in the Circuit Court for Carroll County, which was later transferred to the Circuit Court for Anne Arundel County. The Ethics Commission moved to dismiss Lennon's suit. The trial court granted the Ethics Commission's motion, and dismissed Lennon's claims with prejudice. Lennon then filed a motion to amend the judgment of the trial court, which the court granted in November 1996. The court heard argument on the merits and granted summary judgment in favor of Lennon, thereby reversing the Ethics Commission's finding that Lennon violated the Ethics Ordinance. The trial court granted Lennon declaratory relief, finding "no violation of Carroll County Ethics Law No. 37," and enjoined the County Commissioners from "interfering with [Lennon's] duties as a member of the Planning Commission of Carroll County for the balance of his term." Lennon subsequently resigned from the Planning Commission on May 20, 1997. The Ethics Commission noted this appeal.[3] We must first decide whether a live controversy

---

**3.** Although the trial court also reversed the County Commissioners' opinion that Lennon committed malfeasance in office, the County

still exists and, if so, whether the Ethics Commission is entitled to appeal the trial court's ruling.

## II.

■■■■ Lennon first argues that the appeal should be dismissed because the case is now moot. Specifically, Lennon says that the assurance he made to the Carroll County Commissioners to "refrain from such outside employment in the future," coupled with his subsequent resignation from the Planning Commission, moots the original controversy between the parties. Appeals may indeed be dismissed for mootness under Md. Rule 8–602(a)(10). The Court of Appeals has articulated the test for mootness as whether "a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy." *Adkins v. State*, 324 Md. 641, 646, 598 A.2d 194, 197 (1991) (citing *Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395, 397 (1989)); *Attorney General v. Anne Arundel County School Bus Contractors Ass'n*, 286 Md. 324, 327, 407 A.2d 749, 752 (1979). Unlike the Article III constitutional constraints on the federal courts, however, our mootness doctrine is based entirely on prudential considerations. *Reyes v. Prince George's County*, 281 Md. 279, 296–97, 380 A.2d 12, 22 (1977); See also *State v. Peterson*, 315 Md. 73, 82, 553 A.2d 672, 677 (1989) ("[T]here is no *constitutional* prohibition which bars [our courts] from expressing its views on the merits of a case which becomes moot during appellate proceedings." (Emphasis added)). As a result, we may decide a case, even though it is moot, "where there is an imperative and manifest urgency to establish a rule of future conduct in matters of important public concern . . . ." *Anne Arundel County School Bus*, 286 Md. at 328, 407 A.2d 749. Moreover, there are other exceptions to the mootness doctrine that allow a court to pass on questions that may, technically, be moot, such as, where one party voluntarily

---

Commissioners are not a party to this appeal. As a result, we address only the Ethics Commission's finding that Lennon violated § 3.c of the Ethics Ordinance.

withdraws from the challenged conduct. For the reasons discussed below, we find that a live controversy exists and, therefore, hold that this case is not moot.

In arguing that this case is moot, Lennon overlooks the critical distinction between the two remedies he requested in his lawsuit: an injunction and a declaratory judgment. The distinction is obvious in the definitions of the two forms of relief. Injunctive relief is relief "prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury ... [g]enerally it is a preventive and protective remedy, *aimed at future acts,* and it is not intended to redress past wrongs." Black's Law Dictionary 784 (6th ed.1990) (emphasis added). Declaratory relief, by contrast, is a "remedy for the determination of a justiciable controversy where the plaintiff is in doubt as to his legal rights." *Id.* at 409. The Maryland Uniform Declaratory Judgments Act, Md.Code Ann., Cts. & Jud. Proc., § 3–409(a) (1973), provides that a court may grant a declaratory judgment ... "if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if: (1) An actual controversy exists between the parties ... [and] (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it." Interpreting the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Supreme Court has stated that *"different considerations* enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other." *Steffel v. Thompson,* 415 U.S. 452, 469, 94 S.Ct. 1209, 1221, 39 L.Ed.2d 505 (1974) (quoting *Roe v. Wade,* 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973) (citations omitted) (emphasis in *Steffel* )).[4] In light of this difference, the Court noted that, while a resolution between the parties may moot the claim for injunctive relief,

---

4. As former Chief Judge Murphy noted in *Hamilton v. McAuliffe,* 277 Md. 336, 340 n. 2, 353 A.2d 634, 637 n. 2 (1976), the Maryland Declaratory Judgment Act is to be "construed in harmony" with the Federal Declaratory Judgment Act. See Md.Code, Courts and Judicial Proceedings, § 3–414.

courts have a "duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Zwickler v. Koota,* 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967); *see Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 121, 94 S.Ct. 1694, 1697, 40 L.Ed.2d 1 (1974).

*Super Tire* involved a labor dispute in which the employers of the striking workers brought an action for injunctive and declaratory relief, claiming that the regulations according benefits to the striking workers were invalid because they interfered with the policy of free collective bargaining. Before the case was tried, the labor dispute was settled, and the strike ended. The District Court heard the case on the merits, rejecting the mootness claim. The Third Circuit remanded the case to the District Court with instructions to dismiss for mootness. The Supreme Court reversed, holding that, "even though the case for an *injunction* dissolved with the subsequent settlement of the strike and the strikers' return to work, the parties to the principal controversy . . . may still retain sufficient interests and injury as to justify the award of *declaratory relief.*" *Super Tire,* 416 U.S. at 121–22, 94 S.Ct. at 1698 (emphasis added).

Likewise, in the case at bar, the principal controversy as to whether Lennon's activities fall within the ambit of the Carroll County Ethics Ordinance is very much "alive" and in need of resolution. There is no doubt that Lennon's claim for *injunctive relief* became moot upon Lennon's resignation from the Planning Commission on May 20, 1997, prior to our consideration. Lennon could not further violate the Carroll County Ethics Ordinance if he was no longer a member of the Carroll County Planning Commission. Indeed, as between Lennon and the Ethics Commission, the trial court did not even grant injunctive relief because Lennon had already assured the Ethics Commission that he would refrain from the challenged conduct. In reversing the Ethics Commission's opinion, however, the trial court granted declaratory relief in favor of Lennon, finding that he did not violate §§ 3.c or 3.d of the Ethics Ordinance. That finding is still very much in dispute.

Again, the key question is whether, "at the time [the case] is before the court, ... there is [still] an existing controversy between the parties ...," *Anne Arundel School Bus*, 286 Md. at 327, 407 A.2d 749, and whether the parties continue to assert adverse legal positions in which they maintain a concrete interest. Md.Code Ann., Cts. & Jud. Proc., § 3–409(a)(3). Plainly, the Ethics Commission has a concrete interest in the resolution of the instant litigation. The Ethics Commission is endowed with the power to "process and make determinations as to complaints filed by any person alleging violations of [the Ethics Ordinance]." Carroll County Ordinance No.37 § 2(c). The Ethics Commission has been aggrieved by the lower court's decision in this case, particularly since the lower court's summary reversal of the agency's decision provides very little in the way of interpretive guidance. We find, therefore, that the Commission's ability to carry out its statutory obligations would be hampered without the benefit of appellate review.

Moreover, even if we were to find that this case is moot, which we do not, we would decide the issue on the merits because it "involves matters of public importance that are likely to recur if not decided now." *Anne Arundel County Professional Firefighters Association v. Anne Arundel County*, 114 Md.App. 446, 455, 690 A.2d 549, 553 (1997). Although moot cases should be decided only in "rare instances," *Reyes*, 281 Md. at 297, 380 A.2d 12, this case meets all of the requisites for decision. As the Court of Appeals has consistently held, appellate courts may decide moot cases

if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between the government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision.

*Mercy Hospital, Inc. v. Jackson*, 306 Md. 556, 563, 510 A.2d 562, 565 (1986) (quoting *Lloyd v. Supervisors of Election*, 206 Md. 36, 43, 111 A.2d 379 (1954)).

We can think of few issues more important than the public's confidence in government officials. In ferreting out alleged ethical violations, the Carroll County Ethics Commission performs an essential public function. The issue is perhaps even more acute when it occurs, as in this case, at the local government level, where the government and its citizens have greater contact with one another. Particularly in the smaller counties of our State, attorneys regularly serve on local government agencies in the same jurisdiction in which they practice. Consequently, the question regarding the extent to which attorneys may simultaneously "wear the hat" of both attorney and government official is bound to recur frequently, and attorneys who find themselves in this situation are entitled to know what conduct is in accordance with the statutory provisions. In addition, as we stated above, the Ethics Commission, whose obligation it is to "process and make determinations as to ... alleg[ed] violations of the [the Ethics Ordinance]," would be disabled in its efforts to carry out its obligation were the lower court's ruling insulated from appellate review.

Finally, we cannot accept Lennon's argument that his voluntary cessation of the challenged conduct serves to moot the case. If that were so, appellate review could consistently be foreclosed in cases like this as long as the putative violator resigns from his position or even simply promises to refrain from the challenged conduct. Indeed, the Supreme Court has consistently held that "voluntary cessation of a challenged practice does not deprive a [court] of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).[5] According-

---

**5.** Insofar as this issue is "capable of repetition, yet evading review," it falls within yet another exception to the mootness doctrine. See *State v. Parker*, 334 Md. 576, 584–85, 640 A.2d 1104 (1994); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Sosna v. Iowa*, 419 U.S. 393, 399–400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975).

ly, even assuming that the case is moot, we will decide this appeal.

## III.

■ The next preliminary issue is whether the Carroll County Ethics Commission is entitled, as a matter of law, to appeal the trial court's decision. Lennon argues that the Ethics Commission's enabling statute does not give the Commission the power to appeal and .it is " 'well established' in Maryland that an administrative agency acting in a quasi-judicial capacity cannot take an appeal in the absence of statutory authority." Lennon relies on *Board of Zoning Appeals v. McKinney*, 174 Md. 551, 199 A. 540 (1938) and *Maryland Board of Pharmacy v. Peco*, 234 Md. 200, 198 A.2d 273 (1964). The Ethics Commission does not dispute that certain quasi-judicial agencies are precluded from taking appeals, but argues that the Ethics Commission, because of its broad executive powers, is not a quasi-judicial agency. We agree with the Ethics Commission and hold, as a matter of law, that it has standing to appeal.

In *McKinney*, 174 Md. at 558, 199 A. 540, the Court found that the Board of Zoning Appeals of Baltimore City was a quasi-judicial agency, existing by virtue of statute, whose primary responsibility was hearing and deciding appeals from the Buildings Engineer. The Court further found that the Board of Zoning Appeals had "no executive duties . . . and it formulate[d] no policies." *Id.* at 560, 199 A. 540. Rather, the Board's function was "merely to find facts, to apply to those facts rules of law prescribed by the legislature, and to announce the result." *Id.* at 560–61, 199 A. 540. The Court concluded that since the Board

has no interest [in the case] different from that which any judicial or *quasi* judicial agency would have, which is to decide the cases coming before it fairly and impartially, is in no sense aggrieved by the [lower court's decision], and has

no statutory right of appeal, it had no power to take this appeal, and the appeal must be dismissed.

*Id.* at 564, 199 A. 540. (Emphasis in original).

Some twenty-five years later, *McKinney* was reaffirmed in *Maryland Board of Pharmacy v. Peco*, 234 Md. 200, 198 A.2d 273 (1964). There, the Court found that the Maryland Board of Pharmacy, because it merely acted on the pharmacy permit applications submitted before it, was a quasi-judicial agency as defined by *McKinney*, and thus could not appeal an adverse trial court ruling.

Just one year ago, however, the Court of Appeals stated, in no uncertain terms, the limitations of the *McKinney–Peco* doctrine, in holding that the Board of Liquor License Commissioners had standing to appeal an adverse circuit court ruling. *Board of Liquor License Commissioners for Baltimore City v. Hollywood Productions, Inc.*, 344 Md. 2, 684 A.2d 837 (1996). The Court noted that "the functions of certain agencies are so aligned with *interpreting and enforcing* the State's policies that the rationale of the *McKinney* doctrine simply does not apply." *Id.* at 8, 684 A.2d 837 (citing *Consumer Protection v. Consumer Pub.*, 304 Md. 731, 746, 501 A.2d 48, 56 (1985)) (emphasis ours). "In determining whether the *McKinney* limitation on the right to appeal is applicable to [a particular] agency," the Court wrote, "we consider characteristics such as the authority to adopt rules, investigate complaints, prosecute violators, and issue orders in furtherance of the public interest. . . ." *Id.* at 9, 684 A.2d 837.[6] With those considerations as our framework, we now decide whether the Ethics Commission has standing to appeal. We conclude that it does.

The Carroll County Ethics Commission, established by statute in 1982, is composed of three members who are appointed

---

**6.** Highlighting *McKinney's* limitations, the *Hollywood Productions* Court, 344 Md. at 9, 684 A.2d 837, listed several contemporary cases in which the doctrine was found not to apply. *See Maryland Racing Commission v. Castrenze*, 335 Md. 284, 295, 643 A.2d 412, 417 (1994); *Maryland Real Estate Commission v. Johnson*, 320 Md. 91, 97, 576 A.2d 760, 763 (1990); and *Maryland Dep't of Human Resources v. Bo Peep Day Nursery*, 317 Md. 573, 585–86, 565 A.2d 1015, 1020–21 (1989).

by the Carroll County Commissioners. Carroll County, Md. Ordinance § 37–82 (1982). The Ethics Commission has the authority to "process and make determinations as to complaints [of alleged ethical violations]," and "issue a cease and desist order against any person found to be in violation of [the Ethics Ordinance] and seek enforcement of this order in the Circuit Court for Carroll County." *Id.* at §§ 2(c),7(a). The Ethics Commission therefore possesses the executive, investigatory and prosecutive functions that remove it from the limitations imposed by the *McKinney–Peco* doctrine. *See Hollywood Productions*, 344 Md. at 9–10, 684 A.2d 837. Further, and perhaps more important, the Ethics Commission has the responsibility of protecting the public's confidence in government by prosecuting the ethical transgressions of government officials. It is almost axiomatic, then, that the Ethics Commission is an agency that "represents the interests of the public and the State in carrying out their duties." *Id.* at 10, 684 A.2d 837. Accordingly, we hold that the Ethics Commission has standing to appeal.[7]

## IV.

We now consider the issue on the merits, namely, whether the trial court erred in granting summary judgment in favor of appellee, Robert Lennon, finding that he did not violate the Carroll County Ethics Ordinance. We review the grant of a motion for summary judgment to determine whether the trial court was legally correct. *Baltimore Gas & Electric Co. v. Lane*, 338 Md. 34, 43, 656 A.2d 307, 311 (1995). We find that the trial court erred as a matter of law in its interpretation of the Ethics Ordinance and, accordingly, reverse that court's opinion and order.

As we noted, the Carroll County Ethics Ordinance provides in pertinent part:

---

7. This case is not an administrative appeal. Accordingly, the constraints described in *Healthcare Strategies, Inc. v. Howard County Human Rights Comm'n*, 117 Md.App.349, 700 A.2d 278 (1997), are not applicable.

## SECTION 3 CONFLICTS OF INTEREST

Carroll County officials and employees who are subject to this Ordinance shall not:

＊ ＊ ＊ ＊

c. Be employed by a business entity that: has or is negotiating a contract of more than $3,500.00 with the County or is regulated by their agency; except as exempted by the Commission pursuant to Section 6 of this Ordinance.

The Ethics Commission contends that Lennon provided private legal services to Samuel and Linda Battaglia in connection with an off-conveyance (subdivision) application for a parcel of property owned by the Battaglias in Carroll County; that, the attorney-client relationship commenced in late 1994, and continued, at least, through April 1995, when Lennon completed the necessary deeds for the Battaglia real estate; that, during the period in which Lennon represented the Battaglias, the Battaglias also had a proposal to extend water and sewer service to their property; that the water and sewer proposal was before the Planning Commission, and that Lennon was a member of that Commission at the time; and that, on March 21, 1995, the date on which the Battaglia proposal came up for consideration and vote before the Planning Commission, Lennon "participated in the discussion of the ... Battaglia plan, moved for approval of the Battaglia plan, and voted to approve the Battaglia plan."

We agree with the Ethics Commission that there are essentially three elements that must be satisfied to establish a violation of § 3.c of the Ethics Ordinance: [8]

---

8. Because the Carroll County Ethics Ordinance is patterned directly after the Maryland Public Ethics Law, Md.Code Ann., State Gov't, §§ 15–101 *et seq.*, (1995) (former Md Code Ann.1957, 40A, § 1–102), which directs each county and municipal corporation of the state to "enact provisions to govern the public ethics of local officials relating to (1) conflicts of interest ..." *Id.* at § 15–803, we look to the latter to define the operative terms in the statute.

(1) The individual must be a Carroll County official subject to the Ordinance;

(2) The Carroll County official must be employed by a business entity; and

(3) The employing business entity must be regulated by the official's agency.

The parties do not dispute that Lennon, as a member of the Carroll County Planning Commission, was a county official subject to the Ethics Ordinance, nor do they dispute that Lennon's legal representation of the Battaglias constituted "employ[ment] by a business entity" as defined by the statute.[9] Rather, the point upon which the parties disagree is the third prong, namely, whether the employing business entity, the Battaglias, was regulated by Lennon's agency, the Planning Commission.

In analyzing this aspect of the case, we believe the trial court seriously misinterpreted the statute. Indeed, by framing the "central issue" as "whether the Planning Commission regulates 'off-conveyance applications,'" the lower court's analysis was flawed from the outset, as Lennon's actions with respect to the off-conveyance applications were only one part of the Ethics Commission's inquiry. The better analysis, and the one undertaken by the Ethics Commission, is to consider, separately, two distinct but related aspects of Lennon's activities as they relate to his membership on the Planning Commission: his involvement in the Battaglias' proposal to extend water and sewer service, *as well as* his handling of off-conveyance applications. We examine these two issues in turn.

### A.

Lennon's first contact with the Battaglias came in late 1994, when the couple requested the attorney's services in preparing

9. "A '[b]usiness entity' means a person engaged in business, whether profit or nonprofit, regardless of form." Md.Code Ann., State Gov't, § 15–102(e) (1995).

an off-conveyance application. At around the same time, on December 20, 1994, the Battaglias' proposal to extend water and sewer service came before the Planning Commission for preliminary consideration. Lennon recused himself from this meeting and took no part in the consideration of the Battaglia proposal. On March 6, 1995, he resumed his work on the Battaglia off-conveyance, filing the necessary application with the Department of Permits and Regulations. The application was approved on March 9, 1995, and in April Lennon prepared the necessary deeds for the off-conveyance.

The critical date, however, was March 21, 1995. On that occasion, the Planning Commission met for final consideration and vote on the Battaglias' proposal to extend water and sewer service to their property. This time, Lennon, the Battaglias' attorney for their off-conveyance application, not only participated in the discussion of the Battaglia plan, but also "moved for approval of the Battaglia plan, and voted to approve the Battaglia plan."

The Ethics Commission found that Lennon's participation at this meeting constituted a violation of § 3.c of the Ethics Ordinance because, at the time of the meeting, Lennon's clients were "regulated by the Commission of which Lennon [was] a member." The trial court summarily reversed this finding, without so much as attempting to ascertain the meaning of the term "regulate" as used in the statute. We find that the plain meaning of the term "regulate" supports the conclusion reached by the Ethics Commission and, therefore, reverse the trial court.

■ Since the term "regulate" is not defined in either the Carroll County Ethics Ordinance, or the analogous state conflicts of interest provision, see Md.Code Ann., State Gov't, § 15–501(a)(2)(v) (1995), we must give the term its "plain and ordinary meaning." *Chesapeake and Potomac Telephone Co. v. Director of Finance*, 343 Md. 567, 578, 683 A.2d 512 (1996); *Antwerpen Dodge, Ltd. v. Herb Gordon Auto World*, 117 Md.App. 290, 699 A.2d 1209, 1219 (1997). "Regulate" is defined as follows:

1a: to govern or direct according to rule;

1b: to bring under control of law or constituted authority; Merriam Webster's Collegiate Dictionary, 985 (10th ed.1996).

We conclude that the Battaglias were, in fact, regulated by the Planning Commission. Although Lennon correctly notes that both the County Commissioners and the State Department of the Environment have supervisory authority over County water and sewerage plans, *see* Md.Code. Ann., Envir., §§ 9–503, 9–507 (1989), there is no doubt that the Planning Commission plays a critical role in the regulatory scheme. While it by no means guarantees ultimate approval, a favorable recommendation by the Planning Commission surely increases the likelihood that a proposal will be adopted by governing authorities. In addition to the above-quoted "plain meaning" definition, our appraisal of the term "regulate" is informed by the Court of Appeals' instructive analysis in *Mount Vernon–Woodberry Cotton Duck Co. v. Frankfort Marine Accident and Plate Glass Ins. Co.*, 111 Md. 561, 75 A. 105 (1909). There the Court held that a statute that purports to regulate an activity is better understood as "carry[ing] into effective operation a **scheme**," rather than providing for "total abolition" of the activity. *Mount Vernon*, at 567, 75 A. 105 (quoting *Whitman v. State*, 80 Md. 410, 416, 31 A. 325 (1895)) (emphasis ours). We find that reasoning persuasive and conclude that the term "regulate" is broad enough to encompass the kind of advisory authority that the Planning Commission possesses in these circumstances.

Lennon argues, however, that his participation in the March 21 meeting is not a violation of the Ethics Ordinance because the water and sewer proposal was unrelated to the off-conveyance, the matter on which he represented the Battaglias as an attorney. We find no merit in this argument. The Ethics Ordinance's prohibition on outside employment is categorical. There is no limitation that the outside employment be related in any way to the matter that is before the county agency, so long as the *employer* is regulated by the agency. Indeed, Lennon's participation in voting on the Bat-

taglia water and sewer proposal would have been just as unethical had he represented the Battaglias on an unrelated personal injury action. The fact that Lennon was employed by the Battaglias as their attorney and participated, in his capacity as a public official, in approving his clients' proposal, is sufficient to constitute a violation of the statute.

Lennon also argues that there was no violation because the Planning Commission's vote was merely an " 'up or down vote' on a single issue which had been recommended and approved by every other body, department, or agency which had considered it." Again, we disagree. It is immaterial that other subordinate agencies had already approved the Battaglia plan; the plan still required the final approval of the Planning Commission, and Lennon played a significant role in that approval. As the Ethics Commission correctly noted in its brief in opposition to summary judgment, "[t]he Ordinance does not except from its operation non-controversial or routine matters."

Finally, Lennon argues that he was no longer the Battaglias' attorney on March 21, 1995, the day on which he participated in the Planning Commission meeting. The trial court apparently agreed, stating:

This Court further finds that the employment relationship between the Plaintiff and the Battaglia's [sic] was concluded before the March 21, 1995 Planning Commission meeting. In fact, the Battaglia's [sic] were no longer Plaintiff's clients.

We find nothing in the record to support the trial court's conclusion. Lennon filed the Battaglias' off-conveyance application on March 6, 1995, the application was approved on March 9, 1995, and Lennon notified the Battaglias of the approval on March 13, 1995. Then, in April 1995, just two weeks after the Planning Commission meeting, Lennon prepared the necessary deeds for the Battaglias' property. Lennon would have us believe that he was acting as the Battaglias' attorney on March 6, March 9, and March 13, and in the early part of April, but somehow not on March 21. In the absence

of any persuasive evidence to the contrary, we must be guided by common sense, and assume that Lennon was the Battaglias' attorney throughout the two-month span.

The only evidence to which Lennon directs us in support of his position is the "expert" testimony of Charles O. Fisher, Sr. Mr. Fisher testified before the County Commissioners that "another very important aspect of what I've heard today is that ... the employment of Mr. Lennon in [the Battaglia matter] terminated on at least the 13th day of March, and they were no longer his clients." Lennon's representation to this Court that Mr. Fisher testified as an expert witness is not supported by the record of this case. Although the lower court did note that "Mr. Fisher *has been* qualified as an expert witness on legal matters" before various courts in Maryland (emphasis ours), there is no indication that he testified as an expert in this case. In any event, the proceedings before the County Commissioners are not part of the record, and Lennon concedes that this argument "was not presented directly to the Appellant Ethics Commission." We, therefore, reject the testimony of Mr. Fisher as it relates to this issue. Finding no other support for Lennon's position, we view the trial court's finding as clearly erroneous, and conclude that Lennon was, in fact, employed by the Battaglias on March 21, 1995.

## B.

Turning our attention to the second aspect of the Ethics Commission's inquiry, we conclude that Lennon violated the Ethics Ordinance by handling off-conveyance applications on behalf of the Battaglias and other private clients. As he argued with respect to the water and sewer proposal, Lennon's defense to the off-conveyance applications is that they are not regulated by the Planning Commission. He argues that those "off-conveyances which do not involve a new street or a planned public project ... are reviewed and acted upon by a completely different agency; [t]hus, in no sense are those applicants 'regulated' by the Commission on which Mr. Lennon served." We are not persuaded.

Rather, our review of the record reveals that off-conveyance applications are evaluated by the Planning Commission in the regular course of business. Indeed, the minutes from the December 20, 1994 Planning Commission meeting show that the Planning Commission considered and approved an off-conveyance application for the "Osbourne property." The minutes also indicate that Lennon was the Osbournes' attorney for their off-conveyance application, though Lennon did recuse himself as he had previously done when the Battaglia water and sewer proposal was considered. In defending his representation of the Osbourne application, Lennon argues that "[he] had no reason to anticipate a conflict with a proposed street at the time of his representation of the Osbournes or knew [sic] that the subject would be on a Planning Commission agenda." In effect, Lennon is engrafting a *scienter* requirement into the statute. That is, because he *knew* that the Battaglia off-conveyance did not involve a planned street or public project he could handle that application and that, because he *did not know* that the Osbourne application did involve a planned street, he cannot be held accountable for handling that application. We reject that proposition. The Ethics Ordinance does not contain a *scienter* requirement, and violations of the Ordinance should not turn on the subtle distinctions that Lennon proposes.

The Legislature's intent in enacting the Maryland Public Ethics Law, from which the Carroll County Ethics Ordinance was derived, was to ensure that " . . . the people maintain[ ] the highest trust in their government officials and employees," and to assure the "impartiality and independent judgment of those officials and employees." Md.Code Ann., State Gov't, § 15–101(a). Further, the Legislature intended that the ethical provisions be "liberally construed to accomplish this purpose." *Id.* at § 15–101(c). In view of the Legislature's clear intent in this area, we conclude that Lennon, then a Carroll County official, violated the Ethics Ordinance when he handled off-conveyance applications for the Battaglias and the Osbournes, as both the Battaglias and the Osbournes were

business entities subject to regulation by the Planning Commission, the agency on which Lennon sat.[10] Again, it is not necessary that the Planning Commission review every off-conveyance application. Rather, the fact that the Planning Commission possesses the authority to review the off-conveyance applications and does, in fact, review certain applications is enough to render Lennon's outside employment improper.[11]

**JUDGMENT REVERSED; CASE REMANDED FOR THE LIMITED PURPOSE OF ENTERING DECLARATORY JUDGMENT ON BEHALF OF APPELLANT, CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY COSTS.**

---

**10.** Lennon does not dispute that his handling of the Osbourne off-conveyance constituted employment by a business entity within the meaning of the Carroll County Ethics Ordinance.

**11.** Nothing we express today is intended to discourage or preclude practicing attorneys from serving on local government agencies with regulatory powers. Rather, the scope of our holding is much more focused: pursuant to the Carroll County Ethics Ordinance, a Carroll County official, who also maintains a private law practice, may not represent a client in any matter if, at any time during that representation, that client simultaneously has business before the County agency on which the official serves and the violation cannot be cured by recusal. We leave for another day the broader conflict of interest questions that lie beneath the surface of our opinion, such as, whether the rules of imputed disqualification would apply under the Ordinance so as to bar a County official from acting on a proposal submitted by his law partner's client. *Cf.* Md. Rules of Professional Conduct 1.7 – 1.10.