983 A.2d 557

**ANNE ARUNDEL COUNTY ETHICS COMMISSION**

v.

**Robert J. DVORAK, et al.**

**No. 2714 Sept.Term, 2007.**

Court of Special Appeals of Maryland.

Nov. 24, 2009.

See also 408 Md. 539, 971 A.2d 214; 400 Md. 446, 929 A.2d 185.

48

Betsy K. Dawson (Douglas C. Hollmann, on the brief), Annapolis, MD, for Appellant.

Phillip F. Scheibe and John R. Greiber, Jr., Millersville, MD, for Appellee.

Panel: HOLLANDER, WRIGHT and JOHN F. McAULIFFE (retired, specially assigned), JJ.

HOLLANDER, Judge.

This appeal arises from a seemingly endless battle between the Anne Arundel County Ethics Commission (the "Commission"), appellant, and Phillip Scheibe, Esquire and Robert Dvorak, appellees, who are former senior level employees of Anne Arundel County (the "County").[1] The appeal concerns

---

[1] This appeal is the latest chapter in an ongoing dispute that involves several prior appellate proceedings. *See Anne Arundel County v. Halle*

appellees' involvement, after they left County employment, in class action litigation instituted against the County by various property owners, pertaining to the County's development impact fees. To some extent, the issues are muddled because we have two judicial trains running largely on parallel tracks, with different engineers. As we shall see, however, in this matter the tracks have crossed.

On June 4, 2004, the County Executive of Anne Arundel County filed a Complaint with the Commission against appellees, claiming that they violated Public Ethics Law, Article 9, § 5–105 (" § 9–5–105") of the Anne Arundel County Code (the predecessor to § 7–5–105 of the County Code).[2] Following a hearing that began in November 2005, the Commission found in the County's favor. It issued an Order on March 13, 2006 (the "Order"), requiring appellees to cease their participation in the litigation against the County and to accept no further compensation for their work. The circuit court subsequently affirmed (Harris, Jr., J.). However, in related litigation, the circuit court (Caroom, J.) denied the County's motion to disqualify Scheibe from his role as counsel for the plaintiffs.

Because appellees allegedly failed to comply with the Commission's Order, the Commission filed in the circuit court a "Petition for Permanent Injunctive Relief, Imposition of Fines and Other Appropriate Relief" (the "Petition"). At issue here

---

*Development, Inc., et al.,* 408 Md. 539, 971 A.2d 214 (2009) (Adkins, J.); *Dvorak v. Anne Arundel County Ethics Commission,* 400 Md. 446, 929 A.2d 185 (2007) (Bell, C.J.); *Anne Arundel County v. Halle Development, Inc., et al.,* No. 2552, September Term 2006, 178 Md.App. 745, 178 Md.App. 750 (Md.Ct.Spec.App. February 7, 2008) (Rodowsky, J.); *Anne Arundel County v. Cambridge Commons,* 167 Md.App. 219, 892 A.2d 593 (2005) (Bloom, J.), *cert. denied,* 393 Md. 242, 900 A.2d 749 (2006); *Cambridge Commons v. Anne Arundel County,* No. 1340, September Term 2001, 145 Md.App. 711, 145 Md.App. 713 (Md.Ct.Spec.App. August 21, 2002) (Kenney, J.). In our attempt to recapitulate the history of this dispute, we shall quote liberally from the earlier appellate opinions.

**2.** Unless otherwise noted, all statutory references shall be to the Anne Arundel County Code.

is the circuit court's ruling on December 28, 2007, denying the Petition (Harris, Jr., J.).

Appellant presents three questions for our review, which we quote:

I.  Did the circuit court err by applying traditional equitable principles in a case involving a statutory injunction?

II. Did the circuit court err by reconsidering and relying upon matters that are barred by res judicata?

III. Did the circuit court abuse its discretion or err as a matter of law by relying on laches, hardship to private litigants, the failure of the Ethics Commission to pursue alternative remedies through the Attorney Grievance Commission, and other factors set forth in its decision?

For the reasons that follow, we shall reverse in part, vacate in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Scheibe and Dvorak each worked for the County for many years, in various capacities. Among other positions, Scheibe served as County Attorney for three years, beginning in 1967, and again from December 1994 until May 1999, when he retired. Dvorak worked for the County for about 23 years, including service as the Director of the Department of Planning and Code Enforcement. He also served as the Chief Administrative Officer from 1994 until his retirement in 1997.

The underlying matter is rooted in the case of *Halle Development, Inc., et al. v. Anne Arundel County,* Case No. C–2001–69418–AA, a class action suit. Suit was filed on February 21, 2001, in the Circuit Court for Anne Arundel County, by Greiber & Scheibe, the law firm in which Scheibe is a principal (sometimes referred to as the "*Halle* litigation" or "the impact

---

3. The court docket and the contents of the record do not contain information prior to March 30, 2006. For the period prior to March 30, 2006, our factual summary derives from the record extract, which includes excerpts from the proceedings prior to that date.

fee" litigation).[4] Scheibe entered his appearance as co-counsel for the *Halle* plaintiffs on December 13, 2002. The suit alleged that, between 1988 and 1996, Anne Arundel County mishandled and unlawfully used the development impact fees it collected. Greiber & Scheibe hired Dvorak in 2000, before filing the impact fee suit, to examine the County's public financial records. *See Dvorak,* 400 Md. at 447–48, 929 A.2d 185.

On December 15, 2006, in the *Halle* case, the circuit court entered judgment against the County in the amount of $4,719,359, with five percent interest, measured from the date of payment of each fee. The circuit court also awarded attorneys' fees, equal to thirty percent of the total recovery.

On June 4, 2004, some three years after the *Halle* case began, and about eighteen months after Scheibe entered his appearance, the County Executive, Janet Owens, filed an ethics complaint with the Commission (the "Complaint"),[5] alleging violations of Public Ethics Law § 9–5–105 of the County Code, based on appellees' participation in the *Halle* litigation. Owens averred:

> In my opinion, the actions of former County Attorney Phillip F. Scheibe and former Chief Administrative Officer and Director of Planning & Code Enforcement Robert Dvorak in assisting and representing plaintiffs in certain cases against the County, constitute violations of the Anne Arundel County Public Ethics Law. While employed by the county, [appellees] participated substantially in matters that are now the subject of the litigation, and both had informa-

---

**4.** Halle Development, Inc. is one of the representative plaintiffs. Cambridge Commons was the original plaintiff, but it sold its property during the pendency of the impact fee suit.

**5.** The Commission has both prosecutorial and quasi-judicial responsibilities. *Cf. Consumer Protection Division v. Consumer Publishing Co., Inc.,* 304 Md. 731, 762–70, 501 A.2d 48 (1985). To avoid confusion, we shall generally refer to the Commission as the "Agency" when we are speaking of it in its prosecutorial role, and shall refer to it as the "Commission" when speaking of it in its quasi-judicial role.

tion not generally available to the public when they undertook the assistance and the representation of the plaintiffs.[6]

Section 9–5–105, on which Owens relied, provided, in part:

**§ 5–105. Representation by former employees.**

(a) A former employee may not assist or represent a party other than the County in a case, contract, or other specific matter for compensation if the matter involves the County and:

> (1) the former employee participated significantly in the matter as an employee; or

> (2) the former employee had information not generally available to the public when the former employee undertook the assistance or representation.

Notably, § 9–5–105 became effective on November 5, 2003, *after* appellees had retired from County service.[7] However, it replaced § 9–3–109 of the County's Public Ethics Law, which was in effect during the time that appellees were employed by the County. Section 9–3–109 provided, in part:

**§ 3–109. Representation by former employees.**

(a) A former employee may not assist or represent a person in connection with a specific matter in which the former employee, as a County employee:

> (1) acted on behalf of or represented the County in a matter involving substantial responsibility on the part of the employee; or

---

**6.** Ms. Owens also noted that Scheibe was co-counsel for the plaintiffs in two other cases pending against the County that involved impact fees. Dvorak was not involved in those cases. The Commission concluded that there was no evidence that Scheibe had violated the ethics law by participating in those cases, because in one, Scheibe withdrew his appearance, and in the other, the County was dismissed as a party.

**7.** Effective November 9, 2005, § 9–5–105 was repealed and reenacted as § 7–5–105, to conform its language to Md.Code (2004 Repl.Vol., 2008 Supp.), § 15–504 of the State Government Article ("S.G."). The Commission's findings were made when § 9–5–105 was in effect. In any event, § 7–5–105 is substantively the same as § 9–5–105. *See Dvorak,* 400 Md. at 448 n. 3, 929 A.2d 185.

(2) with reference to which the former employee acquired information not generally available to the public when the former employee undertakes the assistance or representation.

Based on the ethics Complaint, the Agency issued subpoenas duces tecum to appellees, requiring them to appear for a deposition and produce documents. Scheibe and Dvorak responded with a "Motion for Protective Order" on August 20, 2004, claiming, *inter alia,* that the Commission lacked jurisdiction over them and that it sought information relating to attorney work product that was "not subject to discovery." The Commission denied the motion on August 23, 2004.

Thereafter, on August 26, 2004, the Agency filed in the circuit court a "Petition to Enforce a Subpoena." On August 30, 2004, appellees filed a "Petition For Appeal" in the circuit court, challenging the Commission's denial of their motion for protective order. They argued that Dvorak was hired "for the sole purpose of examining and reporting his findings only as regards the financial records of Anne Arundel County, which are public records and are readily available to any citizen"; that the Complaint "as it relates to Phillip F. Scheibe [was] specious"; and that the Complaint was "politically motivated." Following a hearing on March 3, 2005, the court (Lerner, J.) issued an Order of that date, granting the Agency's petition to enforce the subpoenas and directing appellees to comply. When appellees failed to appear, the Agency filed a "Petition for Civil Contempt." By Order dated June 16, 2005, the court (Hackner, J.) found Scheibe and Dvorak in constructive civil contempt of the Order of March 3, 2005.

As to the ethics Complaint, Dvorak and Scheibe filed a motion with the Commission on November 10, 2005, seeking its dismissal. They argued that the documents on which the Complaint was based are public and are not "privileged or confidential." They also averred that "it was not possible for them to receive a fair and impartial hearing before the Commission"; that the Commission lacked jurisdiction over matters of professional misconduct applicable to Scheibe; and that

§ 9–5–105 is "vague, arbitrary and capacious [sic] in that it is devoid of any reasonable provisions that limit the amount of time the Commission may exercise its jurisdiction [after] a former employee's departure from County service...."

The Commission held an evidentiary hearing over the course of several days in November 2005, December 2005, and January 2006, pursuant to the County's Public Ethics Law, Article 9, § 4–102(d) (stating that "the Commission shall proceed to a hearing on the complaint, conducted in accordance with this title"). James Cannelli, an employee of the Planning and Zoning Department; Yolanda Takesian, a former Planning and Zoning Department employee; Gregory Nourse, a former Budget Office employee; and Raymond Elwell, the assistant Budget Officer who worked with Dvorak on the capital budget when Dvorak became Chief Administrative Officer, testified regarding Dvorak's work with the County and his involvement in the impact fee program. In addition, Robert Pollock, Assistant County Attorney, testified that when Scheibe was County Attorney, he asked Pollock to research and present him with a written opinion concerning the County's impact fee law. The parties also introduced numerous exhibits.

At the conclusion of the hearing, the Commission asked the parties to submit proposed findings of fact and conclusions of law. Although the Agency submitted proposed findings, appellees failed to do so. Instead, on March 7, 2006, appellees' counsel filed a "Supplemental Motion for Dismissal," claiming, *inter alia*, that appellees could not "be charged for ethics violations of law or applicable standards which were non-existent [sic] during their terms of employment with the County, nor can the Commission assume jurisdiction over [them] for charges based upon laws and standards that were recently enacted subsequent to their retirement."

On March 13, 2006, the Commission issued its "Findings of Fact and Conclusions of Law" ("Findings"), a 35–page document that addressed numerous issues. It determined that it had jurisdiction to consider whether appellees' involvement in

the *Halle* litigation "violated any provision of the current Public Ethics Law, notwithstanding the fact that [appellees] left County employment before 2003...." Moreover, it found, *inter alia*, that appellees did not "establish any substantive differences between the law that was applicable to [appellees] prior to 2003 [i.e., § 9–3–109] and the law that is applicable to them afterwards [i.e., § 9–5–105]" ... because "[t]he 2003 amendments did not remove the restrictions placed on the [appellees'] post-employment activities by the earlier Public Ethics Law."[8] The Commission reasoned:

> The introductory language of prior § 3–109(a), "A former employee may not assist or represent a *person in connection* with a specific matter ...," was changed to "A former employee may not assist or represent a *party other than the county in a case, contract, or other* specific matter *for compensation* ...." (Emphasis added.) "Person" was merely clarified to mean "party other than the county," and ... the addition of the terms "case" and "contract" provides more fact scenarios to which post-employment restrictions apply. By contrast the addition of "for compensation" narrows the overall applicability of the provision ... for purposes of this proceeding the Commission finds these changes have no substantive effect on this case.[9]

In addition, the Commission found that Dvorak was a former employee of the County within the meaning of § 9–5–105, as well as former § 9–3–109, and that he had been paid "about $2500 to date for his assistance in the [*Halle*] case." Further, it determined that Dvorak possessed knowledge of the County's impact fee program, gathered from his "various capacities as the director of the Department of Inspections and Permits, the Planning and Zoning Officer, the Director of Planning and Code Enforcement, and as the Chief Administrative Officer of the County...." It also determined that, as a

---

8. The Chairman and six other members signed the Findings.

9. In any event, the Commission ruled in the alternative, finding that appellees' conduct violated both § 9–5–105 *and* § 9–3–109.

County employee, Dvorak had acquired information not available to the public, within the meaning of both § 9–5–105(a)(2) and former § 9–3–109(a)(2).[10]   Thus, the Commission found that he "participated 'significantly in' (within the meaning of present § 5–105) and had 'substantial responsibility for' (within the meaning of former § 3–109) the specific matter at issue [in the *Halle* case], i.e., the County's administration of the impact fee program, while he was an employee of the County."

The Commission also stated:

In the present case, the factual findings support the conclusion that Mr. Dvorak significantly participated on a regular basis in the administration of the impact fee program.   His participation involved precisely the same matters that are involved in the [*Halle*] case. . . .   Mr. Dvorak's participation in the administration of the impact fee program encompassed several years of regular managerial decision-making. . . .

As to Scheibe, the Commission found that when he was the County Attorney, he asked Assistant County Attorney Robert Pollock to "review the County's impact fee law to determine if in fact the County could use impact fees . . . for renovation of existing facilities in the County's existing school buildings." Mr. Pollock submitted a written opinion to Scheibe on the

---

**10.**   As to the possession of "information not generally available to the public," the Commission commented:

Information not generally available to the public certainly includes confidential documents that are exempt from public disclosure under the Public Information Act, but it also includes the verbal communications, thought processes, or mental impressions of county officials that simply cannot be assessed through a document file search . . . Modern technology notwithstanding, the information that a person has stored in his or her memory is not generally available to the public.

If it were correct that only documentary evidence were relevant to an ethics violation under § 5–105(a) (or its predecessor), Respondents' argument that all documents are public records would imply that there exists no information that is *not* generally available to the public.   In other words, the provision prohibiting former employees from using to the County's detriment information not generally available to the public would be meaningless. . . .

subject. Based on this testimony, the Commission determined that "Mr. Scheibe participated 'significantly in' (within the meaning of present § 5–105) and had 'substantial responsibility for' (within the meaning of former § 3–109) the specific matter, i.e., the County's administration of impact fees, as an employee of the county." It said:

> Mr. Scheibe's participation was more limited [than that of Mr. Dvorak], but equally significant. Mr. Scheibe's solicitation of a legal opinion from Mr. Pollock effectively constituted a review of an important legal issue in the [*Halle*] case. While Mr. Scheibe claims that his involvement was at best "inaction," the legal conclusion of the memo provided "assistance" in the formulation of the allegations in the [*Halle*] complaint that the County misused impact fee money for renovation and remodeling.

The Commission also found that appellees

> were in positions of responsibility with the County, they were decision makers with access to other decision makers, and they both participated in the resolution of impact fees issues. They had information, albeit not necessarily documentary, that was not generally available to the public when, in 2002, they undertook to assist and represent the plaintiffs in [the *Halle* litigation] . . . As long-time, experienced County employees, Mr. Dvorak and Mr. Scheibe should have been aware of the post-employment restrictions and other provisions of the Public Ethics Law, part of the County Code that they were obliged to uphold.

The Commission concluded that appellees "violated § 5–105 of the Public Ethics Law with regard to their participation and assistance rendered in the [*Halle*] case." Notably, it also said: "To the extent it may be applicable here to actions prior to 2003, we reach the same conclusion under former § 3–109." On the same date (March 13, 2006), the Commission issued an "Order of Compliance." It directed Scheibe "to terminate his participation and assistance to the plaintiffs" in the *Halle* litigation, and "to accept no further compensation for the assistance he has already provided to the plaintiffs. . . ." As

to Dvorak, the Commission recognized that he "may have concluded the bulk of his assistance to the plaintiffs," but ordered him "to terminate his participation and assistance to the plaintiffs," and not to accept any further compensation.

Scheibe and Dvorak subsequently sought judicial review of the Commission's Findings and Order, pursuant to Code, § 7-4-105. They argued that the Commission lacked jurisdiction because § 9-5-105 was not in effect during their employment with the County, and the Agency "failed to produce sufficient evidence to demonstrate the existence of possible violations of the Anne Arundel County Ethics laws." [11] In their "Memorandum Pursuant to Rule 7-207," appellees asked the circuit court to reverse the Commission's "Findings." They argued that counsel for the County in the *Halle* case, Linda Schuett, admitted at the hearing before the Commission that, "from day one," she knew of appellees' "alleged prior involvement in impact fees" and yet "brought no such evidence" to the attention of the court during the class certification hearing in 2003 (Davis–Loomis, J.). As a result of Ms. Schuett's "inaction," claimed appellees, the Commission was foreclosed by waiver. Further, appellees averred that they were not afforded due process because the County Executive, who initiated the ethics Complaint, appointed the members of the Commission and asked them to resolve a dispute in which the County Executive had a vested interest.

In its response, the Agency argued, *inter alia,* that the Commission had jurisdiction over appellees under both § 9-5-105 and its predecessor, § 9-3-109, and that, in any event, any changes in the law were "purely stylistic" and "insubstantial." If anything, claimed the Agency, the current provision "impos-

---

**11.** On or about April 21, 2006, appellees filed a "Motion to Stay Order of Compliance." Following a hearing on August 2, 2006, the circuit court granted that motion. Appellant contends that the Stay remained in effect from August 2, 2006, through July 31, 2007—the date on which the Court of Appeals filed *Dvorak v. Anne Arundel County Ethics Commission,* 400 Md. 446, 929 A.2d 185 (2007), dismissing appellees' appeal of the circuit court's decision of August 30, 2006, and affirming the Commission. Appellant did not ask the circuit court to lift the stay.

es a more onerous burden of proof on complainants." The Agency also insisted that appellees "could not have relied *in good faith* on the inactivity of the County in pursuing ethical misconduct" because, as cabinet level officers in County government, knowledge of the ethics law was imputed to them.

In the meantime, on May 8, 2006 (almost two months after the Commission issued its Order of March 13, 2006, and while the judicial review action was pending), the County filed in the *Halle* litigation a "Motion to Disqualify" Scheibe and his law firm as counsel for the plaintiffs, pursuant to the Maryland Lawyers'. Rules of Professional Conduct ("MRPC"). *See* MRPC 1.9, "Duties to Former Clients"; MRPC 1.11, "Special Conflicts of Interest For Former and Current Government Officers and Employees."[12] In opposition, Scheibe argued that the County had waived any right to disqualification because of its inordinate delay, measured from the institution of suit in 2001 to the filing of the motion to disqualify in 2006.

The circuit court heard the motion to disqualify *before* it ruled on appellee's petition for judicial review of the Commission's Order of March 13, 2006. Because the appeal of the Commission's Order had not yet been decided, the County did not ask the judge in the impact fee matter "to apply the Commission's Order." *Anne Arundel County v. Halle, supra,* No. 2552, slip op. at 33.

On June 5, 2006, in the *Halle* case, the circuit court (Caroom, J.) denied the County's motion to disqualify Scheibe and his law firm. The court reasoned:

> [T]he County chose to delay this filing more than five years until 2006. The Ethics Commission investigation and opinion added little to the motion's factual basis. Even if the Ethics Commission investigation were construed as an appropriate and necessary first step for the filing of the motion, there is no sufficient explanation of why that investigation was delayed for three years

---

12. The Record Extract does not contain the motion to disqualify.

... This Court finds that the County waived its right to ask for the removal of Plaintiff's [sic] counsel due to the inordinate delay in seeking this drastic remedy [of disqualifying counsel].

The court also noted that it had to "consider additional factors embodied in the Rules and case law which were not considered by the Ethics Commission" and that appellees "may contest the Commission's fact finding in that separate litigation."

As noted, the circuit court awarded a judgment of $4,719,359 against the County in the *Halle* litigation, as well as attorneys' fees to counsel for the plaintiffs. In its appeal from that judgment, the County challenged, *inter alia,* the circuit court's denial of its motion to disqualify Scheibe. In an unreported opinion, a panel of this Court stated: "We find no reversible error on the part of the circuit court in its denial of disqualification...."[13] *See Anne Arundel County v. Halle,* No. 2552, *supra,* slip op. at 37. Writing for the panel, Judge Rodowsky explained, *id.* at 36:

[T]he circuit court focused on the acknowledgment by the County Attorney in her affidavit that she was aware that the files in her office contained documents relating to impact fees that had been addressed to Scheibe or on which he was copied. It found no explanation why the County had not earlier initiated its investigation by examining its own files or by interviewing holdover staff. In addition, the circuit court placed heavy emphasis on the factor of prejudice to Owners. It said: "There can be no question that, as this case draws nearer to its conclusion, after dozens of dispositive motions, thousands of pages of transcripts, two interlocutory appeals, etc., that obtaining new Plaintiffs' counsel for this class action would be difficult, costly, and very time consuming." Based on its consideration of all of the factors stated above, the court found that, due to inordinate delay

---

**13.** The Court of Special Appeals considered numerous issues, and the Court of Appeals affirmed on the issues included in its grant of certiorari. The Court of Appeals did not address the disqualification issue. *See Anne Arundel County v. Halle Development, Inc., supra,* 408 Md. 539, 971 A.2d 214.

on its part, the County had waived its right to seek disqualification.

· The panel reasoned, slip op. at 37:

We find no reversible error on the part of the circuit court in its denial of disqualification sought under the MRPCs. First, we do not interpret the court's reference to ruling as a matter of law to mean that the court believed that it lacked discretion to grant the motion. Indeed, in a footnote to its opinion, the circuit court observed that if the motion had been filed promptly in 2001 "the result likely would have been the opposite." ... We hold ... that the procedure followed by the trial court was, in effect, governed by Maryland Rule 2–502.[1] Disqualification was a separate issue that was decided under Rule 2–502, which permits the court to draw inferences from the facts presented. The finding of inordinate delay was not clearly erroneous. Substitution of new counsel for Owners, in litigation that has been pending for almost seven years, that has produced eight file boxes of court records, undoubtedly even more volume for the files of Counsel, and 6,568 pages of record extract, would have extended the delay in the resolution of this matter, increased expense, and further reduced the fund to be distributed to Owners. Any violation by Counsel ... of the MRPCs can be addressed by Bar Counsel.[14]

---

**14.** On January 21, 2009, Bar Counsel submitted a Statement of Charges to the Attorney Grievance Commission ("AGC") alleging that Scheibe's participation in the *Halle* litigation violated MRPC 1.9 ("Duties to Former Clients.") and MRPC 1.11 ("Special Conflicts of Interest for Former and Current Government Officers and Employees.") By letter dated February 28, 2009, the AGC notified Scheibe that a complaint had been filed against him "citing possible disciplinary matters based upon an anonymous correspondence which contained a copy of Judge Rodowsky's opinion [in the *Halle* litigation] of February 7, 2008." On March 31, 2009, the AGC Peer Review Panel held a hearing and issued a "Peer Review Panel Report," dismissing the matter. It said: "No violations of MRPC 1.9 & 1.11. Based upon evidence presented to the panel, attorney Scheibe was NOT personally & substantially involved in the matter at issue and the prior matter was different."

*With respect to enforcement of the Commission's order, however, the above analysis is inapplicable. The Commission ordered Scheibe to terminate representation of Owners and to accept no further compensation. Scheibe's unsuccessful efforts to overturn that order have been exhausted. To the extent that Scheibe continued to participate in this litigation after that order was entered, he took the risk that there would be no reversal [of the Commission's Order]. The circuit court had no discretion or power to decline to enforce, on waiver grounds, the Commission's order. Ac*cordingly, on remand, the circuit court must reconsider its award of counsel fees. On remand, the circuit court may hear argument and, if it so chooses, take testimony on the question of an appropriate manner of enforcing the Commission's order. (Emphasis added.) [15]

Of import here, Judge Rodowsky also said: "[T]he reasonableness of legal fees is a question for the court." *Id.*, slip op. at 51. In connection with the remand, the Court said: "The [circuit] court then, in its discretion, should consider, in light of this opinion and its further findings, whether to adjust, up or down, the provisional fee to Counsel, without reflecting Scheibe's disqualification." The panel also suggested application of a formula that the Court included at the end of the opinion, "as a possible method of implementing our holding on disqualification. . . ." *Id.*, slip op. at 52.

Thereafter, in the ethics litigation, the circuit court (Harris, Jr., J.) issued an "Opinion and Order" on August 30, 2006 (filed September 6, 2006), affirming the Commission's Find-

---

**15.** Notably, Judge Rodowsky also said:

We disagree that the appropriate period for determining waiver includes the period when the County's complaint was pending before the Commission. The circuit court, acting under the Maryland Lawyers' Rules of Professional Conduct (MRPC), would have no basis for addressing Dvorak's conflict of interest, and the complaints against both Dvorak and Scheibe were sufficiently interrelated for economies of time to dictate consolidation in one proceeding. Further, Scheibe is not entitled to benefit from the delay occasioned by his violation of the Commission's order and by his contemptuous violation of the circuit court's order.

ings of March 13, 2006. Noting that appellees had the burden to "show by clear and satisfactory evidence that the Commission's decision is illegal or unreasonable," Judge Harris said: "It is not this court's role to substitute its judgment for the expertise of the [Commission] in reviewing the Commission's Findings...." On September 11, 2006, appellees filed a "Motion to Alter, Amend" the Order of August 30, 2006, arguing that the court failed to consider numerous issues that they had raised in their May 25, 2006 memorandum. The court denied the motion on October 4, 2006.

Appellees appealed the circuit court's ruling in the ethics case to this Court on October 16, 2006. Before this Court considered the matter, the Court of Appeals granted certiorari, 397 Md. 396, 918 A.2d 468 (2007). But, the Court subsequently dismissed the appeal, for lack of appellate jurisdiction. *See Dvorak, supra,* 400 Md. 446, 929 A.2d 185. In its opinion of July 31, 2007, the Court of Appeals pointed to Md.Code (2006 Repl.Vol.), § 12–302(a) of the Courts and Judicial Proceedings Article, which states: "Unless a right to appeal is expressly granted by law, § 12–301 of this subtitle does not permit an appeal from a final judgment of a court entered ... in reviewing the decision of the District Court, an administrative agency, or a local legislative body." The Court explained that there is "no provision of Anne Arundel County law that confers a right of appeal to the Court of Special Appeals in this kind of case...." *Id.* at 459, 929 A.2d 185. Moreover, it stated that Dvorak and Scheibe "failed to raise any question concerning the Circuit Court's jurisdiction 'to sit in review of such a judgment....'" *Id.* at 459, 929 A.2d 185 (citation omitted).

On September 10, 2007, pursuant to County Code § 7–8–101 and § 7–8–102,[16] the Agency filed in circuit court a "Petition

---

16. § 8–101. Petition by Commission.
    To compel compliance with an order or to seek other relief authorized by this title, the Ethics Commission may file a petition in a circuit court with venue over the proceeding.
    § 8–102. Judicial relief.

for Permanent Injunctive Relief, Imposition of Fines, and Other Appropriate Relief" (the "Petition"), to "compel compliance" with the Commission's Order of March 13, 2006. In its Petition, the Agency averred:

> Dvorak and Scheibe have been in violation of the ethics law on a continuous basis beginning on February 1, 2001 and continuing through the present time, for a minimum total of approximately 2040 days, with each day constituting a separate violation of the law ... The [appellees] are continuing to assist and represent the plaintiffs in the *Halle* case as evidenced by [an] affidavit ... and [other] accompanying documents.

The Agency asked the court to permanently enjoin appellees "from continuing to assist and/or represent the plaintiffs in the *Halle* case"; enjoin them from accepting any compensation from or on behalf of the plaintiffs; require them to "disgorge any and all compensation received to date" from the *Halle* case; and to impose a civil fine of an "appropriate amount up to $1,000.00 for each day the violation occurred."

Appellees moved to dismiss the Petition on September 24, 2007. They argued, *inter alia*, that the court lacked subject matter and personal jurisdiction, and claimed that the request violated Articles 17, 19, and 24 of the Maryland Declaration of Rights. Appellees also claimed that the Commission's Order of March 13, 2006, was "barred under the doctrines of waiver, judicial estoppel, and preclusion," and was "mooted" by Judge Caroom's Order of June 5, 2006, denying the County's motion to disqualify Scheibe.

---

(a) **Compelling compliance.** The court may compel compliance with the Commission's order by issuing an order to cease and desist from the violation or by granting other injunctive relief.

(b) **Additional remedies.**

(1) In addition, the court may:

(i) impose a fine not exceeding $1,000 for a violation of this article, with each day that the violation occurs being a separate offense.

* * *

(c) **Relief granted.** After hearing the case, the court may grant all or part of the relief sought.

On December 18, 2007, the circuit court (Harris, Jr., J.) held a motion hearing. The following colloquy is pertinent:

THE COURT: [B]ecause the County was so long in filing to get this whole thing started Judge Caroom, I believe, ruled that it would be prejudicial to the Plaintiffs [in the *Halle* litigation] to toss their attorneys out 80 percent into the case.

[APPELLANT'S COUNSEL]: Yes, Your Honor, but what he said was that the County had waived its right to pursue any conflict of interest. We are not the County. We were not party to the case. We had no chance to argue that case. The ethics law was not a question in that case. The ethics law was not even involved in that case. We weren't party to that case.

\* \* \*

THE COURT: [H]ere is the problem I am having. If I were to go ahead and grant your injunction, which you may be entitled to, quite frankly because this [ethics] case has run its course. It went up [to] the Appellate Court ... it went to the highest Appellate Court and they said that the appeal was dismissed. So my decision stands in that regard, but if I were to grant your injunction, wouldn't that undermine what Judge Caroom already has in the works?

[APPELLANT'S COUNSEL]: No, Your Honor, because Judge Caroom's decision [to deny the motion to disqualify] was based on waiver and waiver only applies to the government when it's a corporate decision.

Appellant's counsel acknowledged that "after four years it doesn't seem to have much value to impose an injunction ... it doesn't have any practical purpose ... The *[Halle]* case is almost over." She indicated that appellant's primary concern was that appellees "aren't unjustly enriched because of this egregious violation," asserting:

Now they have, knowing since 2004 that this was a problem, continued to participate in this case. To me, if they are getting attorney's fees and expert witness fees, it would be totally inappropriate. They have violated the ethics law. If

you look at the findings of fact and conclusions of law, which you affirmed, those violations are egregious, absolutely phenomenally so. For them to receive profit as a result of those actions, would absolutely make the ethics law worthless.

The court asked if appellant meant for it to be an "all-or-nothing proposition," by which appellees would get no compensation for their work on the *Halle* litigation. Appellant's counsel responded:

That's right and they should not have started this work. I daresay Mr. Scheibe, having been a former County attorney and Mr. Dvorak, having been a cabinet member should have known darn well that they were not legally permitted to get involved in this kind of situation.

Now the fact that they chose to ignore the law and they chose to fight us for the last four years, does not mean that it is okay for them now, because they have worked so hard, to get their attorney's fees and their witness fees for this. They have been perpetuating the wrong that they have started in—that Mr. Scheibe and Mr. Dvorak got involved in less than two years after they left the County government. They knew what they were getting into and they have been wrong from the get go.

Appearing *pro se*, Scheibe argued, in part:

I don't believe this Court has the right to grant the [appellant's] request for relief and there are two salient reasons in particular as to why this request for permanent injunctive relief must be denied.

The first centers on the legal effect of Judge Caroom's opinion and order of June the 5th of 2006, which if the relief sought is granted would effectively render Judge Caroom's opinion and order null and void.

Anne Arundel County, the government of Anne Arundel County, elected in the *Halle* class action litigation to file a motion to disqualify counsel for participating in the litigation based exclusively upon the Ethics Commission's administrative findings. There were no other facts. . . .

[O]f course you know the Court rejected that. The [appellant] now argues they are not bound by the doctrines of res judicata or judicial estoppel or preclusion because the [appellant] is not a party to the *Halle* case, but if it may please the Court, how is it possible that they are not a party to the *Halle* case? Isn't the Anne Arundel County Ethics Commission a part of the Anne Arundel County government? Isn't the *Halle* class action case against the same County government?

* * *

The Ethics Commission is a political body that is appointed by the County executive and the County executive was Janet Owens and it was she who filed the ethics charges against the [appellees].... She was filing ethics charges on behalf of the Anne Arundel County government, not anybody else....

* * *

So now the question before the Court is, can the Anne Arundel County's Ethics Commission administrative decision take precedence over Judge Caroom's order and opinion of June the 5th of 2006. Bear in mind, the Ethics Commission findings were dated March 13, 2006....

Secondly, under what theory of law may this Court claim it has the jurisdictional authority to grant injunctive relief which would effectively discipline an officer of this Court by preventing him from engaging in pending litigation, which has been granted by another Circuit Court judge.

Scheibe accused appellant's counsel of asking the court to "back door it" by having Judge Harris tell Judge Caroom that appellees can no longer participate in the *Halle* case. Scheibe also reiterated arguments advanced in his earlier submissions regarding jurisdiction, ex post facto application of the County Code provisions, the availability of information to the public, and the lack of due process.

Counsel for Dvorak stated, in part:

[W]hat we are looking at is the ability to file the Ethics complaint four years later, in July of 2004 unless they have

waived that right and that is what Judge Caroom said. That is cutting to the chase. That is exactly what he said.

\* \* \*

We come back and on January of 2003 and 4, before another member of this bench there was a class action certification hearing. An amazing thing occurred there, Mr. Scheibe voir dire [sic] and qualified Mr. Dvorak and the County was present, no objection. . . .

Did one of your counterparts, an associate Judge of this bench, Nancy Davis–Loomis address that issue? She sure did. In her opinion she said as follows, "The qualifications of Plaintiff's counsel are fully outlined in the motion for class certification and the subsequent response: they are more than adequate. The County does not dispute the ability or the experience of Plaintiff's attorneys." She said this too in the body of her opinion, "The Court is directed to look for an absence of conflict of interest as well as vigor, experience and diligence of counsel. No conflict of interest has been brought to the attention of this court."

Noting that the County Executive did not file her ethics Complaint until after the circuit court ruled on the liability of the County in the *Halle* litigation,[17] Dvorak's counsel argued:

They said, "Hey file an ethics complaint. We will bootstrap that to a later motion to disqualify and we will get rid of everybody," but they got sidetracked a little bit because Judge Caroom wouldn't buy that. He asked the same thing, "Why, when you had in your files from day one and you admit knowledge of day one, did you not look at it, did you not call somebody?"

\* \* \*

---

**17.** As noted, the County Executive filed the ethics Complaint on June 4, 2004. On December 15, 2006, over two years later, the circuit court entered the $4,715,359 judgment against the County.

Dvorak's counsel also challenged the Commission's right to seek a fine when appellees were "doing nothing more than practicing their professions and the County sitting idly by and letting them participate in a matter that they only see fit to argue is a conflict of interest after they are liable for tens of millions of dollars."

It is the Plaintiffs who suffer in [the *Halle*] case. Because of what? Because of the County's inability to bring this timely. They have waived it. They are estopped. Whether you look at an issue preclusion, judicial preclusion, they simply have no ability to bring the ethics complaint in the first instance.

Dvorak's counsel acknowledged the court's comment that perhaps Scheibe and Dvorak should have realized that their involvement in the *Halle* case might be problematic. But, he argued: "Why did not the County object when they first knew of their employment in that case? ... You can't simply sit by, draw somebody in and after the liability hammer drops, come out and say 'We are now offended by your participation in the case.'"

In response, appellant's counsel maintained that the Commission is an independent body, separate from the County, pursuant to Article X, § 1001 of the Anne Arundel County Charter.[18] She also averred that the Commission merely responded to a Complaint, stating:

The Ethics Commission received this complaint in 2004, which was scarcely two years after Mr. Scheibe says he entered his appearance for *Halle*. Under a statute of limitations that would be under three years. Under laches that would be less than three years. The Ethics Commission responded to a complaint it received. By law, that is all the Commission can do. It must take a complaint. It must investigate it and it must pursue it. That is what the Ethics Commission did.

The Ethics Commission was not a party to *Halle*. They were not sued by Mr. Scheibe or Mr. Dvorak. They were not privy to any of the pleadings filed in that case. The fact of the matter is the Ethics Commission did not know that case was going on. God help us if we are responsible to

---

18. Article X, § 1001 states, in part:

**Sec. 1001. County Ethics Commission.**
(a) (1) There is an Anne Arundel County Ethics Commission.
(2) The Commission is an independent agency.

know every County action that is going on without being told.

In addition, appellant's counsel pointed out that Judge Harris had affirmed the Commission's decision that appellees had "violated the ethics law, that they had participated significantly as employees, turned around and sued the County and that they had information not available to the public when they did so." Further, she argued that the Commission cannot go to the AGC and complain about Scheibe's conduct because the Commission's job is not to enforce the Professional Rules of Conduct. Rather, its job is to enforce the post-employment provisions of the County's ethics law. The following ensued:

THE COURT: Think about who is going to be harmed by this.

[APPELLANT'S COUNSEL]: The citizens of the County Your Honor.

THE COURT: [The *Halle*] Plaintiffs, [appellees'] clients are going to be harmed by it.

[APPELLANT'S COUNSEL]: And so are the citizens of the County. If these Respondents receive their attorney's fees. If the citizens of this County are told "Well yeah, they violated the ethics law, but you know they have been working on this case so long they ought to get paid for it." What does that tell the County citizens? That's okay, charge them with an ethics law violation, but let's get real here, that doesn't matter....

The following exchange is also noteworthy:

THE COURT: ... When you calculated th[e] amount of days that you want me to sanction them on, are you going back to the period of time where they first started representing their clients in this case?

[APPELLANT'S COUNSEL]: Yes, I am.

THE COURT: [E]ven when your client was lax in pursuing this? That is like sitting back and waiting for someone to do all the work and then coming in at the last minute and pulling the rug out from under them. It makes no sense.

[APPELLANT'S COUNSEL]: The Anne Arundel County executive is not our client.

THE COURT: Well, who is your client?

[APPELLANT'S COUNSEL]: The people of Anne Arundel County, the citizens.

\* \* \*

THE COURT: There has already been a decision all of the way up the ladder that they are in violation. That's not—

[APPELLANT'S COUNSEL]: So what you are saying is that 'Yes, they have been working so long in this, you know, how can I deny them all of this money they earned even though they violated the ethics law clearly. You know that is no big deal.' That is what you will be saying if you don't sanction them in some significant way. You will be saying that their unethical conduct pales in comparison to the work they put into this lawsuit and the fees that they should be earning.... That certainly is not what the ethics law is about.

Dvorak's counsel asserted:

Again, to me the salient issue, if I were sitting in your position is, does her client, the County executive on behalf of the County have the ability to initiate the complaint and she clearly did not because Judge Caroom said: "You waived that right." You have to initiate your response from day one. You can't just sit idly by and wait to see how things shake down and that is exactly what they did.

At the close of the hearing, Judge Harris delivered an oral ruling, stating:

My involvement, I thought stopped at the point the Court of Appeals, the highest Appellate Court had basically dismissed the appeal. Now I am being asked today to, in effect, punish the Petitioners in this case and the punishment that the County or the Ethics Commission is asking is a rather Draconian punishment quite frankly, to make them forfeit all of their prior compensation that they may have earned.

I am sure this case was taken on some sort of a contingency fee. For them not to participate in the litigation while there is a case pending in our appellate courts right now and then the bitterness that has gone back and forth in this case between the people I am seeing today I think has compromised the true victims in this case and that is their clients, the litigants.

Whether it is Mr. Scheibe and Mr. Dvorak or another attorney and someone else pursuing this case, they, in all probability, would have prevailed but you are asking me to issue an injunction that quite frankly I am not inclined to do.

I am not inclined to do it for several reasons.... *I feel, that if I were to go ahead and grant your relief today that in effect I would be interfering with progress with Judge's Caroom's case because I think both of our orders would be in direct conflict with each other.* Maybe I would think differently if this case were just starting. You know, if this whole thing had—because I think timeliness is something that permeates this entire case. Everything that has happened of any significant consequence seems to have been done in an untimely fashion and that includes the involvement when the ethics complaint was first filed, but that is something that I don't have to concern myself with today. There are innocent litigants in this case and I think if I were to grant your relief and the injunction, it would undermine everything that has progressed up to this point.

I don't know whether Mr. Scheibe and Mr. Dvorak are going to eventually get paid in this case. *I don't know what other mechanism there would be to block their compensation,* but up until the last ten minutes of this argument, the whole thing has been going through my mind is the issue of the Attorney Grievance. (Emphasis added.)

The court also said: "The fines I think is [sic] a very unreasonable request when it is in line with also asking them to forfeit their compensation that they may have already earned in this case.... This is a Court of equity and I just don't think that is the right thing to do under the circum-

stances and the totality of everything that I know about this case." The court entered an Order denying the Petition on December 28, 2007.

We shall include additional facts in our discussion.

## DISCUSSION

### I.

As noted, to "compel compliance" with the Commission's Order of March 13, 2006, appellant filed its Petition, in which it sought injunctive relief pursuant to § 7–8–102.[19] Appellant contends that, in denying the Petition, the circuit court erred by applying traditional equitable principles to a matter involving a statutory injunction. Although the Commission concedes that it "is generally true that a court sitting in equity has broad discretion to issue injunctive relief," it relies on *State Comm'n on Human Relations v. Talbot County Detention Ctr.*, 370 Md. 115, 803 A.2d 527 (2002), for the proposition that, "when injunctive relief is sought pursuant to statutory authority, the court's discretion to grant or deny relief is more limited." The Commission argues:

> Judge Harris erred by failing to apply the appropriate statutory guidelines in rendering his decision. He failed to consider the public interest in ensuring the ethical conduct of government employees. He failed to consider the legislature's interest in proscribing and prohibiting unethical conduct. He failed to consider the legislature's mandate to enjoin unethical conduct. He failed to consider the irreparable harm that is inherent in a violation of a public ordinance and he failed to consider the Ethics Commission's inability to independently enforce the law.

Because the Commission's Order of March 13, 2006, was affirmed on judicial review, argues appellant, the Order "became valid and binding upon Scheibe and Dvorak." The

---

**19.** Section 7–8–102, *supra*, provides that the "court may compel compliance with the Commission's order by issuing an order to cease and desist from the violation or by granting other injunctive relief."

Commission posits that "Judge Harris' refusal to grant injunctive relief means that there is *no* remedy available for Scheibe and Dvorak's violations of the ethics law. A violation of law without a remedy is the very definition of irreparable harm." In addition, appellant maintains that the Commission's "enforcement authority 'would be inherently limited' without judicial action," and would enable appellees to "continue to violate the law and [become] unjustly enriched as a result of their misconduct."

Asserting that the "Legislature's interest in preventing and proscribing unethical conduct by government employees is . . . beyond dispute," appellant insists that it "established a violation of the ethics law," and that it sought an injunction to "protect the public interest." According to appellant, § 7–8–102 permits the circuit court to issue "an order to cease and desist" *or* "grant other injunctive relief," but the court "does not have the discretion to wholly disregard . . . the public interest in enforcement." It contends that, "without the benefit of judicial enforcement, its ability to compel compliance with the law is wholly non-existent [sic]."

Further, appellant argues that the court "improperly refused to grant injunctive relief on the erroneous assumption that the petition . . . is an attempt to 'punish' Scheibe and Dvorak." According to the Commission, the court's "distress over the effect on Scheibe and Dvorak ultimately punish[es] the citizens-the real victims of this flagrant disregard of the Public Ethics Law." Appellant avers: "While [its requested] relief may effectively deprive Scheibe and Dvorak of ill-gotten gains (whether it is considered punishment or justice) [enforcing the Petition] is at the heart of the administrative responsibility imposed upon the Ethics Commission by the General Assembly and the Anne Arundel County Council."

Appellees counter:

The lower courts of Maryland have always had the authority to exercise sound discretion in determining whether to grant or deny requests for injunctive relief. The Appellant does not assert the lower court abused its inherent

authority to exercise sound discretion, but more particularly proclaims, the lower court was simply without any such discretion whatsoever, and therefore, was duty bound to grant the injunctive relief sought.

According to appellees, appellant "would have this Court adopt the irrational legal concept that any violation of a statutory or constitutional provision thereby mandates granting permanent injunctive relief, without the court's freedom to make an independent assessment of the equities, its jurisdiction and other matters of public interest." They argue that, if we were to adopt appellant's position, "the court would serve no useful purpose, except merely 'rubber stamp' any request for permanent injunctive relief."

In our view, the Commission's decision, finding that appellees violated the County's public ethics law, is now cast in stone; it was upheld by the circuit court and the Court of Appeals subsequently dismissed the appeal of that ruling. But, the companion ruling in the related case, denying the County's motion to disqualify Scheibe, is also cast in stone; the denial of the disqualification was affirmed by a panel of this Court, and the panel's decision was later affirmed by the Court of Appeals.[20] Thus, principles of res judicata apply to both rulings. *See R & D 2001 v. Rice,* 402 Md. 648, 663, 938 A.2d 839 (2008).

---

20. "[T]he guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings. Thus, this Court must not weigh the competing issues with hairsplitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, this Court is to resolve all doubts in favor of disqualification."
*Stratagene v. Invitrogen Corp.,* 225 F.Supp.2d 608, 610 (D.Md.2002) (citations, quotation marks, and brackets omitted).
The party seeking to disqualify opposing counsel must identify a specific violation of a Maryland Rule of Professional Conduct. *See Klupt v. Krongard,* 126 Md.App. 179, 203, 728 A.2d 727 (1999), *cert. denied,* 355 Md. 612, 735 A.2d 1107 (1999). If the court finds a violation has occurred, it may, in the exercise of its discretion, determine an appropriate sanction. *Id.*

Therefore, we are satisfied that, in reaching its decision as to the Petition, the circuit court was entitled to consider the ruling of Judge Caroom in the parallel case. Nevertheless, to the extent that the circuit court focused on harm to appellees and the *Halle* plaintiffs, without considering the importance of the public interest in the enforcement of the public ethics laws, it erred or abused its discretion. Moreover, it erred or abused its discretion by failing to address an appropriate fee award or sanction for Scheibe and Dvorak. We explain.

At the outset, we note that the § 7–1–102 of the Public Ethics Law provides, in part, that the County Council recognizes that the County's "system of representative government is dependent upon the people maintaining the highest trust in County officials and employees...." The County's ethics law derives from the analogous State statute. *See* S.G. § 15–101 *et. seq.* In enacting the State's Public Ethics Law, the General Assembly sought to ensure that "the people maintain[ ] the highest trust in their government officials and employees," and to assure the "impartiality and independent judgment of those officials and employees...." S.G. § 15–101(a). *See Sugarloaf Citizens Ass'n, Inc. v. Gudis*, 319 Md. 558, 575, 573 A.2d 1325 (1990) (stating that Montgomery County's ethics law, like the State's ethics law, "has been read as manifesting the 'General Assembly's strong desire to assure the impartiality and independent judgment of public officials' ") (citation omitted). Further, the Legislature intended that the ethics provisions be "liberally construed to accomplish this purpose." S.G. § 15–101(c). *See Carroll County Ethics Comm'n v. Lennon*, 119 Md.App. 49, 71, 703 A.2d 1338 (1998). As this Court said in *Lennon*, 119 Md.App. at 64, 703 A.2d 1338, "[i]t is almost axiomatic ... that the Ethics Commission is an agency that 'represents the interests of the public and the State in carrying out [its] duties.' " *Id.* (quoting *Board of Liquor License Comm'rs v. Hollywood Prods.*, 344 Md. 2, 10, 684 A.2d 837 (1996)). Notably, " '[s]tatutes are to be interpreted in light of the goal, aim, or purpose for which they were enacted.' " *FOP, Montgomery County Lodge No. 35 v.*

*Mehrling,* 343 Md. 155, 180, 680 A.2d 1052 (1996) (quoting *MVA v. Gaddy,* 335 Md. 342, 346, 643 A.2d 442 (1994)).

Here, the Commission unsuccessfully sought to compel compliance with its Order of March 13, 2006. *Talbot, supra,* 370 Md. 115, 803 A.2d 527, provides guidance in regard to the circuit court's denial of the Petition.

In *Talbot,* the Maryland Commission on Human Relations ("MCHR") sought injunctive relief in the circuit court to preclude an employer's interference in the MCHR's investigation of two discrimination complaints. *Id.* at 121, 803 A.2d 527. Section 4 of Article 49B of the Maryland Code was at issue. It stated, in part:

> At any time after a complaint has been filed, if the Commission believes that appropriate civil action is necessary to preserve the status of the parties or to prevent irreparable harm from the time the complaint is filed until the time of its final disposition, the Commission may bring action to obtain a temporary injunction.

After the circuit court denied the request for injunction, the MCHR appealed. In reversing, the Court of Appeals recognized that the MCHR is "an independent agency" that is "charged with investigating complaints of discrimination in employment, housing and public accommodations under Article 49B . . . and bringing legal and equitable actions pertaining to those violations." *Id.* at 122, 803 A.2d 527. We quote at length from the Court's analysis, *id.* at 128–29, 803 A.2d 527:

> [T]he degree of discretionary authority a court maintains when considering injunctions sought pursuant to, and authorized by, a specific statute is a novel question, not explored by this Court to date. Federal jurisdictions, including the United States Supreme Court, have had the opportunity to consider the inherent differences that exist when a court is asked to issue injunctive relief under its equitable powers versus when the court entertains requests for injunctive relief pursuant to a specific statute and have outlined some considerations for determining whether equi-

table powers are usurped by statutory mandates. On one end of the spectrum, in *Tennessee [Valley] Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), the Supreme Court held that Congress, in the Endangered Species Act, clearly circumscribed the courts' jurisdiction in equity because the statute contained a blanket prohibition against "jeopardiz[ing] the continued existence of endangered species;" thus, upon a concession that the Tellico Dam would destroy the snail darter, the court was required to issue an injunction. *Id.* at 193–95, 98 S.Ct. at 2301–02, 57 L.Ed.2d at 146–47.

In other cases, however, the Supreme Court has refused to find that other statutes spawned an absolute duty upon courts to issue injunctive relief. Most recently, in *United States v. Oakland Cannibus [Cannabis] Buyers Co-op.,* [532 U.S. 483, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001)], the Supreme Court emphasized that its ruling in *Hill* [, *supra,* 437 U.S. 153, 98 S.Ct. 2279], i.e. that the District Court lacked discretion to deny an injunction, was based solely on the fact that an injunction in that case was the "only means of ensuring compliance" with the statute and the "order of priorities" established by Congress would otherwise be "deprived of effect." *Oakland Cannibus [Cannabis] Buyers Co-op.,* 532 U.S. at 496–97, 121 S.Ct. at 1721, 149 L.Ed.2d at 735–36. *See also [Weinberger v.] Romero–Barcelo,* 456 U.S. [305,] 313, 102 S.Ct. [1798,] 1803, 72 L.Ed.2d [91], 99 [(1982)] (stating that while "Congress may intervene and guide or control the exercise of the courts' discretion, . . . we do not lightly assume that Congress has intended to depart from established principles [of equitable jurisdiction]")(internal quotations omitted). As the Supreme Court pointed out in *Romero–Barcelo, supra,* "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." 456 U.S. at 313, 102 S.Ct. at 1803, 72 L.Ed.2d at 99.

In the case *sub judice*, we are not presented with requests to enjoin actions which violate the law; rather we are presented with requests to enjoin actions which arguably impede the Commission from performing a lawful task, i.e. conducting an uninhibited investigation, actions for which irreparable harm must be evidenced. Section 4 of Article 49B grants the Commission the power to bring a civil action for injunctive relief, outlines when and where such action can be brought, and further establishes the criteria under which an injunction may be sought and granted, i.e. "to preserve the status of the parties or to prevent irreparable harm."

The Court concluded that although Article 49B "does not expressly eliminate the circuit court's discretionary authority or expressly create an automatic injunction, it does, in a sense, 'narrow' the circuit court's discretionary authority by replacing the considerations in equity with the statutory criteria...." *Id.* at 129–30, 803 A.2d 527. The Court considered "the propriety of the court's decision to deny injunctive relief with the understanding that the court's equitable discretion is limited to the extent that the Legislature articulated the applicable guidelines for injunctive relief." *Id.* at 130, 803 A.2d 527.

■  In an injunctive action of this type, when the legislation at issue is one that affects or pertains to the public interest, courts need not necessarily adhere to a traditional balancing of the equities. In *Fogle v. H & G Restaurant, Inc.*, 337 Md. 441, 654 A.2d 449 (1995), a class action lawsuit, businesses, trade associations and tobacco companies sought an interlocutory injunction delaying implementation of a Division of Labor and Industries regulation prohibiting smoking in an enclosed workplace. *Id.* at 451–52, 654 A.2d 449. The circuit court granted the injunction. On appeal, the Court recognized that the "subject regulation was promulgated by the Commissioner of the Division of Labor and Industry ... for the purpose of protecting Maryland employees from the hazards associated with environmental tobacco smoke...."

*Id.* at 446–47, 654 A.2d 449. In connection with its discussion as to the propriety of an injunction, the Court stated, *id.* at 456, 654 A.2d 449 (citations omitted):

*[W]e have found that in litigation between governmental and private parties, or in cases in which injunctive relief directly impacts governmental interests, "the court is not bound by the strict requirements of traditional equity as developed in private litigation."* We have also acknowledged that "[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." (Emphasis added.)

*See Schade v. Md. State Bd. of Elections,* 401 Md. 1, 37, 930 A.2d 304 (2007) (same); *Maloof v. Dep't of the Env't,* 136 Md.App. 682, 693, 767 A.2d 372 (2001) (same); *see also Ackerman v. Tri–City Geriatric & Health Care, Inc.,* 55 Ohio St.2d 51, 378 N.E.2d 145, 148–49 (1978) (stating that "it is the majority rule in federal courts and the law in a growing number of state jurisdictions that, where an injunction is authorized by a statute designed to provide a governmental agent with the means to enforce public policy, 'no balancing of equities is necessary.' ") (citation omitted); *Oregon v. O.K. Transfer Co.,* 215 Or. 8, 330 P.2d 510, 514 (1958) (stating that "injunctions can issue without the showing traditionally required in equity courts. This is especially true where a governmental agency is authorized to seek the injunction in protection of the public interest."); *Worthington v. Kenkel,* 684 N.W.2d 228, 233 (Iowa 2004) (finding that "the overall scheme of the statute establish[ed] a public policy" and that "injunctive relief expresses the importance of the policy by serving to enforce the law . . . .").

*Lennon, supra,* 119 Md.App. 49, 703 A.2d 1338, while not on all fours with this case, underscores the importance of consideration of the public interest in matters such as this one. There, the Carroll County Ethics Commission found that an attorney who was engaged in private practice and also sat as a County Official on the County's Planning and Zoning Commission violated the County's ethics laws by representing a client

who was subject to regulation by the Zoning Commission. The Ethics Commission determined that Lennon's "actions constituted 'malfeasance in office'. . . ." *Id.* at 56, 703 A.2d 1338. Lennon filed a complaint for injunctive relief in the circuit court, claiming, *inter alia,* that the Ethics Commission erred as a matter of law in its interpretation of the Ethics Ordinance. *Id.* at 52, 703 A.2d 1338. The circuit court granted summary judgment in favor of the Ethics Commission. *Id.* After Lennon filed a motion for reconsideration, the court reversed itself and granted summary judgment in favor of Lennon, concluding that he did not violate the ethics law. *Id.*

The Commission appealed. Lennon argued that the case had become moot, because he had voluntarily resigned from the Zoning Commission. *Id.* at 57, 703 A.2d 1338. Nonetheless, the Court reached the merits, because the case involved " 'matters of public importance that are likely to recur if not decided now.' " *Id.* at 60, 703 A.2d 1338 (citation omitted). The Court explained, *id.* at 61, 703 A.2d 1338:

> We can think of few issues more important than the public's confidence in government officials. In ferreting out alleged ethical violations, the Carroll County Ethics Commission performs an essential public function. The issue is perhaps even more acute when it occurs, as in this case, at the local government level, where the government and its citizens have greater contact with one another.

█ Turning to this case, § 7–8–102 does not articulate specific guidelines or criteria for the court's consideration with respect to a request for injunctive relief. Nor does it "directly eliminate a court's discretion by mandating a certain outcome." *Talbot,* 370 Md. at 130, 803 A.2d 527 (emphasis omitted). Put another way, § 7–8–102 enables the Commission to pursue compliance with ethics laws that promote the public interest, but the plain language of the provision does not *compel* such compliance. Rather, it states that a court "*may* compel compliance . . ." by providing certain remedies. As the Supreme Court stated in *United States v. Rodgers,* 461

U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), "[t]he word 'may,' when used in a statute, usually implies some degree of discretion." *See also Spencer v. Md. State Bd. of Pharm.,* 380 Md. 515, 532, 846 A.2d 341 (2004) (construing the word "may" "to signal the ordinary meaning of permission unless the context or the purpose of the statute shows that it is meant to be imperative") (citing *Maryland–National Capital Park and Planning Comm'n v. Silkor Dev. Corp.,* 246 Md. 516, 522, 229 A.2d 135 (1967)); *United States v. Mass. Water Resources Auth.,* 256 F.3d 36, 51 (1st Cir.2001) ("[I]t is 'eminently reasonable' to presume that the choice of verbiage is a deliberate one, and that, in the context of that statute, 'may' means may.") (citation omitted); *Flynn v. United States,* 786 F.2d 586, 591 (3d Cir.1986) (finding that where statute states that the court "may" grant injunctive relief, the statute's use of the conditional "suggests that such relief is not mandatory in every case").

At the hearing on December 18, 2007, Judge Harris was understandably concerned that, if he were to grant the Petition, his ruling "would be in the direct conflict" with Judge Caroom's earlier decision, denying the County's motion to disqualify Scheibe. The circuit court also expressed its view that the *Halle* plaintiffs would suffer if the court were to enforce the Commission's Petition, and that a decision granting the requested injunctive relief would "punish" Scheibe and Dvorak. Yet, the court did not appear to consider the purpose of the County's ethics laws, which are intended to protect the citizens of Anne Arundel County.

Although the statutory language of § 7–8–102 does not require the court to grant injunctive relief upon a finding of a violation of the ethics laws, the court's decision must be based on a proper consideration of all the facts and circumstances. When a legislative body enacts a provision for the purpose of benefiting or protecting the public interest, the circuit court must consider the public interest.

As Judge Rodowsky observed in *Anne Arundel County v. Halle,* No. 2552, *supra,* slip op. at 38–39, "Scheibe's unsuccess-

ful efforts to overturn that order [of the Commission] have been exhausted. . . . The Circuit Court had no discretion or power to decline to enforce, *on waiver grounds,* the Commission's Order." (Emphasis added.) Therefore, the court should have considered "an appropriate manner of enforcing the Commission's order," *id.* at 39, even if it did not enforce the precise terms of that Order.

Nor did Judge Harris explain how Judge Caroom's decision had any bearing on the enforcement of the Commission's Order as to Dvorak, who is not an attorney and was not subject to Judge Caroom's ruling. As to Dvorak, the circuit court erred because, in denying the Petition, it erroneously relied on Judge Caroom's ruling, denying the County's motion *to disqualify Scheibe.*

Notably, in his June 5, 2006 Opinion, Judge Caroom recognized that "the County's motion [to disqualify] cannot directly disqualify Robert Dvorak from being a witness as he does not act as an attorney or 'officer of the court.' " Moreover, Judge Caroom recognized that the *Halle* litigation and the ethics litigation are "separate actions with separate issues," and he observed that he had to "consider additional factors embodied in the Rules [of Professional Conduct] and case law which were not considered by the Ethics Commission." [21] The Ethics Commission, an independent agency pursuant to Anne Arundel County Charter § 1001, was not a party in *Halle,* nor were the County's ethics laws at issue in that matter. And, as this Court pointed out in *Anne Arundel County,* No. 2552, slip op., at 34, "The circuit court, acting under the Maryland Lawyers' Rules of Professional Conduct . . . would have no basis for addressing Dvorak's conflict of interest. . . . "

■ In sum, we conclude that the circuit court erred in denying the Petition as to Dvorak, because it relied on the denial of the motion to disqualify, which pertained only to Scheibe. As to Dvorak, the Commission's Order of March 13,

---

**21.** These other factors included "the diligence of the County as moving party and the potential prejudice on [Scheibe] as nonmoving party."

2006, was in force, as it had been affirmed by the circuit court, and the Court of Appeals later ruled that it lacked jurisdiction to consider a challenge to it. Thus, there was no impediment to the entry of an injunction barring Dvorak's participation in the case and acceptance of compensation. Therefore, we shall reverse the circuit court's ruling as to Dvorak.[22]

■ With regard to Scheibe, we agree with the circuit court that it was entitled to consider Judge Caroom's decision, in which he did not disqualify Scheibe.[23] Nevertheless, the court should have considered an appropriate way to enforce the Commission's Findings, even if it was not coextensive with the sanctions set forth in the Commission's Order. We are confident that a sanction that includes adjustment of attorney's fees to Scheibe can be fashioned, which does not do indirectly what we have said cannot be done directly.

Accordingly, we shall reverse the circuit court's ruling as to Dvorak, vacate its ruling as to Scheibe, and remand for further proceedings.[24]

## II.

The Commission also contends that the circuit court erred by considering issues that were "previously litigated and are barred by res judicata." According to appellant, the circuit court's affirmance of the Commission's Findings in its ruling of August 30, 2006, which became final on July 31, 2007, when the Court of Appeals dismissed appellees' appeal, "is now an absolute bar as to all matters that were litigated in that proceeding."

------

**22.** As to Dvorak, appellant is not entitled to any relief beyond the terms of the Order of March 13, 2006.

**23.** As noted, that decision was made before the circuit court upheld the Commission's Order of March 13, 2006.

**24.** On remand, the circuit court may want to consider consolidating this case with the *Halle* case for the limited purpose of determining a proper sanction or fee award for Scheibe.

Appellant claims that the court "erred by reconsidering the timeliness (laches) of the Ethics Commission enforcement action...." The Commission avers that this issue was "properly raised and rejected by Judge Harris during his judicial review of the Commission's Findings and Order," and it cannot be revisited.

In particular, appellant points out that appellees argued laches in their response to the Complaint; their "Motion to Strike Petition for Contempt"; their motion to dismiss the Complaint; their May 25, 2006 memorandum in support of their petition for judicial review of the Commission's Findings and Order of March 13, 2006; and in their "Motion to Alter/Amend" the circuit court's judgment of August 30, 2006, affirming the Commission's Findings and Order of March 13, 2006. Despite Judge Caroom's finding that "the County had waived its right in the *Halle* proceeding to seek disqualification because of its delay in so doing," the Commission maintains that waiver based on delay is not applicable to the ethics proceedings. It states: "Because the issues of laches and equitable estoppel were already litigated and because rejecting this defense was 'essential to the judgment' affirming the Ethics Commission's Findings and Order, the issue is now conclusive in the present action on the judgment."

In their brief, appellees do not respond to appellant's contentions regarding *res judicata*. Instead, they reiterate many of the arguments that they advanced in earlier proceedings, and dispute the Commission's Findings.[25] We need not

---

**25.** For example, appellees characterize as "the acme of absurdity" appellant's continued assertion that "it is not bound by the past conduct of the County government or judicial determinations in the *Halle* class action case." They reiterate that the Commission lodged "bogus ethics charges" against appellees "3½ years after the commencement of class action litigation," which were "politically motivated for the specific purpose of derailing a multimillion dollar class action lawsuit against the County."

In addition, as to the Commission's Findings, appellees assert, once again, that in the ethics Complaint filed on June 4, 2004, "Appellant merely alleges by fiat" that the information in issue was "*not generally available to the public* "; appellant "failed to introduce a single docu-

revisit any of these arguments here, as we agree with appellant that they have already been litigated.

The Court of Appeals summarized the doctrine of *res judicata* in *R & D 2001, supra,* 402 Md. at 663, 938 A.2d 839:

The doctrine of claim preclusion, or *res judicata,* "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *Board of Ed. v. Norville,* 390 Md. 93, 106, 887 A.2d 1029, 1037

---

ment into evidence marked as *privileged, confidential, or prohibited by law from disclosure to the public";* and that the information in issue was "**always** ... **generally available to the public**," under the Maryland Public Information Act, Md.Code (2004 Repl.Vol., 2008 Supp.), § 10–611 of the State Government Article and "County Charter provisions §§ 1004–1005."

Furthermore, appellees reiterate that the "Commission was without subject-matter jurisdiction for failing to acknowledge clear and uncontroverted [sic] evidence of an independent source of information inapposite of it's [sic] claims the Appellees utilized information that was 'not generally available to the public.' " Dvorak and Scheibe rely on a report dated May 1, 1996, which they introduced into evidence during the administrative proceedings. The report, according to appellees, "depicted a myriad of alleged unlawful expenditures of impact fees, dating back to a period of 1988–1996, as well as, alleged captured impact fees, which this report asserted were subject to refunds under the provisions of former Article 24, Title 7 of the Anne Arundel County Code." Scheibe and Dvorak argue that the Commission's decision not to consider the Report "as an outside source of information is tantamount to a tribunal refusing to give weight to exculpatory evidence, and rises to the level of a denial of due process...."

Appellees also reassert that the Commission erred in retroactively applying County Code § 9–5–105, which "was *passed into law 2 years and 7 months* after the *Halle* lawsuit was filed, and years after the Appellees retired from government service." They characterize as "vaporous" appellant's argument that "the 'old law' and 'new law' represent no more than *'stylistic'* changes, and closely resemble one another." (In this regard, appellees overlook that the Commission found that they violated both the law in effect when they were County employees and the later enactment). In their view, "the Circuit Court had no authority to entertain an injunction which is based upon an unlawful enforcement of a statutory enactment passed years after the Appellees had retired from County employment, through means of an *ex post facto* application...."

(2005). *See also Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92, 94 (1961) and *Lizzi v. WMATA,* 384 Md. 199, 206–07, 862 A.2d 1017, 1022 (2004). The doctrine embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*See also Comptroller of Treasury v. Science Applications Intern. Corp.,* 405 Md. 185, 195–96, 950 A.2d 766 (2008) (same); *Lizzi v. Washington Metro.* Area Transit Auth., 384 Md. 199, 206, 862 A.2d 1017 (2004) (*"Res judicata* literally means 'a thing adjudicated,' and generally indicates '[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit.' ") (citation omitted), *cert. denied,* 545 U.S. 1116, 125 S.Ct. 2919, 162 L.Ed.2d 297 (2005); *Long v. Burson,* 182 Md.App. 1, 25 n. 16, 957 A.2d 173 (2008) ("[I]f a judicial body has issued a final judgment on the merits of a claim, *res judicata* prevents a subsequent tribunal from deciding that issue or any other issue that could have been raised in the prior proceeding."); *Kim v. Council of Unit Owners for Collington Ctr. III Condo.,* 180 Md.App. 606, 615, 952 A.2d 346 (2008) ("Res judicata bars a lawsuit involving claims that have been litigated or should have been litigated in a prior proceeding between the same parties, or their privies."); *Boyd v. Bowen,* 145 Md.App. 635, 655, 806 A.2d 314 (2002) (stating that *res judicata* applies when the following conditions are met: "[T]he parties to a second suit are the same or in privity with the parties to a first suit; the first and second suits present the same claim or cause of action; and there was a final judgment rendered on the merits in the first suit, by a court of competent jurisdiction.")

In this case, Judge Harris signed an Order on August 30, 2006, affirming the Commission's Findings of Fact and Conclusions of Law. Subsequently, he denied appellees' "Motion to

Alter, Amend" that judgment. Thereafter, appellees noted an appeal, which was dismissed by the Court of Appeals for lack of appellate jurisdiction. *See Dvorak, supra,* 400 Md. 446, 929 A.2d 185. Consequently, the matter has been fully and finally litigated; the Commission's finding of violations of the ethics laws cannot now be attacked. What remains for determination is the proper sanction to be enforced, given the limitation we have previously discussed.

■ It is not our role to review the administrative findings, as those were already reviewed by Judge Harris and affirmed in a final judgment. As the Court of Appeals said in *R & D 2001, supra,* 402 Md. at 663, 938 A.2d 839 (citation omitted): " 'When an issue of fact or law is actually litigated and determined by a valid and final judgment . . . the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " *See Colandrea v. Wilde Lake Community Ass'n,* 361 Md. 371, 387, 761 A.2d 899 (2000); *Brown v. Mayor & City Council,* 167 Md.App. 306, 319–20, 892 A.2d 1173, *cert. denied,* 393 Md. 243, 900 A.2d 749 (2006); *United Book Press, Inc. v. Maryland Composition Co.,* 141 Md.App. 460, 477, 786 A.2d 1 (2001).

Clearly, appellant's Petition was an action on a final judgment; the judgment was issued by the circuit court, affirming the Commission's finding that appellees violated the ethics law, and later reached the Court of Appeals. Therefore, issues decided by the circuit court, or essential to that judgment, such as the timeliness of the ethics Complaint or retroactivity, cannot be re-litigated.

**JUDGMENT REVERSED IN PART, VACATED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 50% BY APPELLANT, 50% BY APPELLEES.**